**Alexandria**

JOSEPH PATRICK ARNOLD

V.

COMMONWEALTH OF VIRGINIA

No. 1316-92-4

Decided November 23, 1993

COUNSEL

Kevin T. Gaynor, Assistant Public Defender, for appellant.

Virginia B. Theisen, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Joseph Patrick Arnold appeals from his conviction for receiving stolen property in violation of Code § 18.2-108. This stolen property was discovered in his possession when a car in which he was a passenger was stopped for failure to display proper license tags. On appeal, he argues (1) that he had standing to object to the search of the vehicle and shopping bag, and (2) that the trial court erred in concluding that the search of the shopping bag was a valid inventory search rather than a pretext for an investigatory search, thereby denying his motion to suppress. For the reasons set forth below, we affirm appellant's conviction.

On April 25, 1992, Officer Craig stopped the car in which appellant and two others were traveling because the car displayed no rear license tags. At Craig's request, the driver produced a rental agreement which showed that the car had been rented the previous day in Georgia, but he produced no driver's license, stating that his license had expired. Although Craig requested it, the passengers produced no identification. Craig also testified that the two people who had signed the rental agreement were not in the car, but he did not explain how he arrived at this conclusion. The record contains no affirmative evidence that appellant and the other occupants unlawfully possessed the car. Craig testified that, based on the information available to him at that time, he decided to arrest the driver and impound the vehicle be-

cause it was obstructing traffic and neither of the car's passengers had produced a driver's license entitling him to move the car to another location.

Craig then asked the driver if the car contained any contraband, drugs, or stolen property. The driver responded that Craig would have to ask appellant. Appellant said Craig would have to ask the driver. During that time, while checking the car's vehicle identification number, Craig noticed a plastic Hecht's shopping bag in the rear passenger seat next to appellant. Based on the manner in which the bag was folded and his experience in retail security, Craig concluded that the bag might be lined with foil, a method used by shoplifters to disable the anti-theft tags commonly placed on clothing. Craig testified that, in his experience, "a plastic . . . bag," after being folded down or rolled up, "will tend to open back up on its own." If a bag is foil-lined, by contrast, "it's as if you fold up a piece of foil, tin foil, into a roll, it stays that way. It . . . keeps its rigidity. It doesn't open back up." Craig also knew that possession of such a device is a Class 3 misdemeanor in Virginia. Craig then touched the bag, which "felt like it was lined with some type of rigid material." Upon searching the bag, Craig found that it contained six dresses still on the hangers with security tags on them. During the subsequent inventory search, Craig found other stolen items and related paraphernalia in the vehicle. Although Craig asserted that the search at the scene was an inventory search, he admitted that he did not actually prepare a written inventory at the scene. Craig learned later that the vehicle's license tags were valid under Georgia law.

Based on Officer Craig's testimony (neither of the defendants testified), the trial court concluded that the search was proper as an inventory search. The Commonwealth never challenged the motion based on lack of standing, and the trial court did not discuss standing in ruling on the motion. Appellant then entered a plea of guilty conditioned on the preservation of his right to appeal the denial of the motion to suppress. Neither the parties nor the court specifically addressed the issue of standing at the trial level.

I.

We consider first whether appellant had standing to contest the search of the vehicle and shopping bag. This Court has not had occasion to consider this precise issue before. In *Josephs v. Commonwealth*, 10 Va. App. 87, 91-98, 390 S.E.2d 491, 493-97

(1990) (en banc), and *McCoy v. Commonwealth,* 2 Va. App. 309, 311, 343 S.E.2d 383, 385 (1986), we discussed some of the overriding legal principles, noting that "[t]he test is whether the appellant objectively had a reasonable expectation of privacy at the time and place of the disputed search. In making the analysis the court looks to the totality-of-the-circumstances." *McCoy,* 2 Va. App. at 311, 343 S.E.2d at 385 (citing *Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980); *Rakas v. Illinois,* 439 U.S. 128, 143 (1978)). Under that test, we concluded in *Josephs* that a passenger in a stolen vehicle, whose presence was unlawful, had no legitimate expectation of privacy and therefore lacked standing to contest the stop of the vehicle. 10 Va. App. at 98, 390 S.E.2d at 497. Central to the discussion and holding in *Josephs* was that the car was stolen, and the Court implied that the result might have been different if "the defendant had permission of the owner to be in the vehicle as a passenger." *Id.* at 96, 390 S.E.2d at 495-96. In this case, by contrast, the Commonwealth does not contend that the possession of the automobile was unlawful or that appellant was not lawfully present in it.

We conclude that appellant had a reasonable expectation of privacy in the shopping bag located at his feet and, therefore, under the test enunciated above, had standing to contest Officer Craig's search of the bag. Contrary to the Commonwealth's assertions, the Supreme Court's holding in *Rakas v. Illinois,* 439 U.S. 128 (1978), does not compel a different result. In *Rakas,* the question was "a narrow one: Did the search of their friend's automobile after they had left it violate any Fourth Amendment right of the petitioners?" *Id.* at 151 (Powell, J., concurring), *cited with approval* in 4 Wayne R. LaFave, *Search and Seizure* § 11.3(e), at 324 (2d ed. 1987). In addition, in *Rakas,* the defendants asserted no interest in the property seized. 439 U.S. at 129.

■ In this case, by contrast, appellant was present in the car at the time of the search, and the bag was clearly within his reach. The issue here is not so much appellant's legitimate expectation of privacy in the vehicle itself as it is in the closed shopping bag and its contents. *See* LaFave, *supra,* § 11.3(e), at 331. This is precisely the issue addressed by the Court of Appeals for the Ninth Circuit in *United States v. Salazar,* 805 F.2d 1394 (9th Cir. 1986). The Court held in that case that a passenger lawfully present in a vehicle had standing to contest the search of a closed shopping bag found on the floor at his feet. *Id.* at 1396. This was so, said the court, because "[the defendant] demonstrate[d] a[n] [objectively] justifiable expectation of privacy" in the

closed container[1] and "one that society is 'prepared to recognize as legitimate.'" *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 526 (1984)) (other citations omitted); *see also Massachusetts v. King,* 449 N.E.2d 1217, 1222-23 (Mass. 1983).

Although the Commonwealth cites *United States v. Hargrove,* 647 F.2d 411, 412 (4th Cir. 1981), for the proposition that "[a] person who cannot assert a legitimate claim to a vehicle cannot reasonably expect that the vehicle is a private repository for his personal effects, whether or not they are enclosed in some sort of a container, such as a paper bag," it takes that statement out of context. In *Hargrove,* the police had a warrant for the defendant's arrest, and the evidence showed that he was driving a stolen car and disclaimed ownership of the bag. *Id.* Because the vehicle was stolen, the court concluded that he had no legitimate expectation of privacy in either the vehicle or its contents, including the paper shopping bag. *Id.*

## II.

■ Appellant contends that the trial court erred in denying his motion to suppress on the ground that the search of the shopping bag violated his fourth amendment rights. On appeal, the burden is on appellant to show, considering the evidence in the light most favorable to the Commonwealth, that the denial of the motion to suppress constituted reversible error. *See Fore v. Commonwealth,* 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied,* 449 U.S. 1017 (1980). The trial court held that the search was constitutionally permissible as an inventory search conducted pursuant to the valid impoundment of the vehicle. The Commonwealth argues alternatively that the search and seizure were also valid under the plain view exception to the warrant requirement. For the reasons set forth below, we conclude that the search was valid under the plain view exception and do not resolve the issue of the validity of the inventory search.

■ The officer's actions were supported by probable cause developed pursuant to the plain view exception to the warrant requirement.

---

[1] The United States Supreme Court has held that

a constitutional distinction between "worthy" and "unworthy" containers would be improper. Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other, the central purpose of the Fourth Amendment forecloses such a distinction.

*United States v. Ross,* 456 U.S. 798, 822 (1982).

The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view. *Horton v. California,* 496 U.S. 128, 133 (1990). In order to invoke this exception, an officer must meet two requirements: first, he must be lawfully in position to "perceive" a suspicious object, and second, he must have probable cause to believe it to be contraband. *Ruffin v. Commonwealth,* 13 Va. App. 206, 208-09, 409 S.E.2d 177, 179 (1991) (citations omitted). Officer Craig was lawfully present when he observed the bag, for he had stopped the vehicle for a possible license violation. The issue in this case is "whether it was 'immediately apparent' [to Officer Craig] that the object which he detected . . . was evidence of a crime, contraband or otherwise subject to seizure." *Id.* This test is satisfied by a showing of probable cause to believe that the item was contraband. *See Horton,* 496 U.S. at 133. We conclude that Officer Craig had probable cause to believe the bag was or contained evidence of a crime.

This case is controlled by the reasoning of *Texas v. Brown,* 460 U.S. 730 (1983) (plurality opinion), and *Carson v. Commonwealth,* 12 Va. App. 497, 404 S.E.2d 919, *on reh'g,* 13 Va. App. 280, 410 S.E.2d 412 (1991) (en banc), *aff'd,* 244 Va. 293, 421 S.E.2d 415 (1992), in which the courts applied the plain view exception to the warrant requirement to uphold appellants' convictions. In *Texas v. Brown,* an officer conducting a routine driver's license checkpoint observed a motorist who "had an opaque green party balloon, knotted about one-half inch from the tip[,] 'between the two middle fingers of his right hand.'" *Harris v. Commonwealth,* 241 Va. 146, 153, 400 S.E.2d 191, 195 (1991) (quoting *Brown,* 460 U.S. at 734). When asked for his license, the motorist opened the glove compartment, in which the officer saw "several small plastic vials, quantities of loose white powder, and an open bag of party balloons." *Brown,* 460 U.S. at 734. The Supreme Court held that the plain view doctrine allowed the officer to seize and search the balloon because he had probable cause to believe it contained an illegal substance. *Id.* at 742. In so ruling, it noted that "the distinctive character of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officer." *Id.* at 743.

We applied this same reasoning in *Carson* to uphold the seizure of a cut-off straw seen between a motorist's legs. 12 Va. App. at 502, 404 S.E.2d at 922. Based on the officer's testimony that it was "the type straw that people use to ingest cocaine through their noses," we held that "[t]he distinctive character of the straw coupled with the officer's experience 'would warrant a man of reasonable caution' to believe

that the straw might be useful as evidence of a crime." *Id.* (quoting *Brown,* 460 U.S. at 742).

> The uniqueness of the straw's size distinguishes it from straws one would usually encounter for legitimate purposes.

> Although possible, it is highly unlikely that a straw this size would have a legitimate use. Even assuming a legitimate use exists . . ., probable cause to believe the straw is evidence of a crime may nonetheless be established. Even the uninflated, tied-off balloon in *Texas v. Brown* may have been simply a remnant of a birthday party and not an item used for carrying narcotics. However, an investigating officer does not have to "deal with hard certainties, but with probabilities," and is permitted to make "common-sense conclusions about human behavior" in assessing a situation.

*Id.*

The holding in *Harris v. Commonwealth,* in which the Virginia Supreme Court held that the officer did not have probable cause to believe that the object detected was "evidence of a crime, contraband or otherwise subject to seizure," does not require a different result. In *Harris,* a police officer conducting a lawful patdown search detected a film canister in the motorist's pocket. 241 Va. at 148, 152, 400 S.E.2d at 192, 194. Because the officer knew from his personal experience as a narcotics officer that film canisters are frequently used to carry narcotics and other drugs, he removed and opened the canister, finding cocaine inside. *Id.* at 154, 400 S.E.2d at 196. In reversing Harris' conviction, the Court held that the officer did not have probable cause, as required under the plain view exception, to believe that the film canister contained contraband:

> It is true that [the officer] knew from his personal experience . . . that certain people kept their narcotics and drugs in film canisters and "things of that nature." However, law-abiding citizens, on a daily basis, also use film canisters to store film, which is a legitimate use. At best, [the officer] had a "hunch" and a report from an [unreliable] informant.

*Id.* at 154, 400 S.E.2d at 196.

Although none of the aforementioned cases is precisely on point, we think the information available to Officer Craig was sufficient to

provide him with probable cause to believe that the shopping bag was evidence of a crime, contraband or otherwise subject to seizure. Although as in *Harris,* the shopping bag in this case was of the sort that law-abiding citizens put to legitimate use on a daily basis, Officer Craig testified that the manner in which the bag was folded led him to suspect, based on his training and experience, that it was lined with aluminum foil for use as a shoplifting aid. We hold therefore, under the reasoning of *Brown* and *Carson,* that the seizure and search of appellant's bag did not violate the fourth amendment.

*Affirmed.*

Moon, C.J., and Duff, S.J.,* concurred.

---

*Judge Charles H. Duff was appointed Senior Judge effective July 1, 1993, pursuant to Code § 17-116.01:1.