COURT OF APPEALS OF VIRGINIA


Present: Judges Bumgardner, Humphreys and Agee
Argued at Salem, Virginia


CLAUDE GENE SLOAN
                                            OPINION BY
v.    Record No. 1313-00-3        JUDGE ROBERT J. HUMPHREYS
                                          APRIL 10, 2001
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF SCOTT COUNTY
                    Ford C. Quillen, Judge

          Max Jenkins (Jenkins & Jenkins, on brief),
          for appellant.

          Stephen R. McCullough, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Claude Gene Sloan appeals his conviction, after a jury trial,

of two counts of arson, three counts of conspiracy to commit

arson, and one count of obstruction of justice.  Sloan contends

the trial court erred in:  1) denying his motion to sever the

arson and conspiracy charges from the obstruction of justice

charge; 2) permitting the Commonwealth to submit evidence

pertaining to his activities involving marijuana; 3) permitting a

witness to testify that he encouraged the witness to grow

marijuana; and 4) permitting the Commonwealth to amend the

conspiracy indictments after the jury had returned a guilty

verdict.  For the reasons that follow, we affirm the convictions.

## I. Background

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). So viewed, the evidence presented at trial established that Sloan hired Harold Michael Bledsoe to burn three houses in early 1993. Several years later, in January, 1998, while he was serving time in jail on unrelated convictions, Bledsoe gave a statement to police investigators confessing to setting the fires in 1993, and naming Sloan as being involved. In his signed statement, Bledsoe claimed the reason Sloan wanted the houses burned was "because he [did not] want anyone living close to him finding his pot" or stealing from his "pot patch."

Shortly thereafter, Bledsoe was released from prison, and arson and conspiracy charges were brought against Sloan.[1] Bledsoe was subpoenaed to testify. After Sloan learned about the statement Bledsoe had given to police, Sloan offered Bledsoe approximately $500 not to appear and testify.[2] Bledsoe agreed. Sloan gave him $100 and also had Bledsoe record a statement

_____

[1] Sloan was charged with the arson of unoccupied dwelling houses, in violation of Code § 18.2-77.

[2] Apparently, there were unrelated charges also pending against Sloan and his son, Keith Sloan, in a neighboring jurisdiction. Sloan was offering to pay Bledsoe not to testify during those proceedings as well.

denying Sloan's involvement in the fires.  Later, on two separate occasions, Sloan and his son, Keith, threatened to kill Bledsoe if he testified.  In response, Bledsoe told Sloan they would work something out.

Eventually, Bledsoe and Sloan met at Sloan's home and talked about the events that were happening.  Sloan told Bledsoe that he would have to stay at a trailer on Sloan's property, and if Bledsoe left, Sloan would kill him or "burn [his] mom and them out."  Bledsoe agreed and stayed on Sloan's property until he was apprehended by police on June 22, 1999.  During that time, due to Bledsoe's disappearance, the arson and conspiracy charges against Sloan were withdrawn.  However, once Bledsoe was apprehended, the charges were re-filed along with a new obstruction of justice charge.

Prior to trial, Sloan moved to sever the obstruction of justice charge from the arson and conspiracy charges.  Sloan argued that "the intimidation of witnesses is a separate event, and has nothing to do with the arson charges."  The trial court overruled the motion, finding a sufficient relationship between the charges to warrant a single trial.

During the trial, a substantial amount of evidence was admitted concerning Sloan's involvement with marijuana.  Sloan objected to the admission of testimony concerning "stealing pot," as well as testimony that he provided marijuana to Rickey

Benton. Sloan also objected to the testimony of Jeff McNew, who testified that Sloan encouraged him to grow marijuana. Finally, Sloan objected to the admission of Commonwealth's Exhibits 23-39, including photos of drug paraphernalia found in Sloan's home, books pertaining to growing marijuana, and notes containing police radio frequencies. The trial court overruled each objection, finding that the evidence was relevant to the issues in the case.[3]

After the jury returned a verdict convicting Sloan of two counts of arson, three counts of conspiracy and one count of obstruction of justice, the Commonwealth moved to amend the indictments for conspiracy. The conspiracy indictments each read, in pertinent part, as follows:

> did unlawfully and feloniously conspire,
> confederate, or combine with another to
> commit arson, in violation of Section
> 18.2-22 of the Code of Virginia Class 6
> Felony

The Commonwealth argued that the indictments contained a typographical error classifying the conspiracy charges as Class 6 felonies, rather than Class 5 felonies. The trial court granted the motion, finding that Sloan was not taken by surprise by the amendment and that because the jury had not seen the indictments and/or considered punishment, the indictments could

---

[3] Sloan also moved for a mistrial in conjunction with several of these objections. These motions were likewise overruled.

be properly amended. After sentencing, Sloan made a motion to set aside the verdict that was also overruled.

## II. Motion to Sever

On appeal, Sloan argues that the trial court erred in failing to grant his motion to sever the obstruction of justice charge from the arson and conspiracy charges, because joinder "allowed [the Commonwealth] to introduce multiple [m]arijuana offenses which would not normally be admissable [sic] in an [a]rson case." However, Sloan's only argument to the trial court concerned his theory that the intimidation and the arsons were separate offenses. Accordingly, we do not address his argument on appeal. See Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994); see also Rule 5A:18.

## III. Drug Related Evidence

Sloan next argues that the trial court erred in allowing the admission of evidence concerning his alleged marijuana operation, as well as allowing the admission of testimony from witness Jeff McNew that Sloan had encouraged McNew to grow marijuana. Sloan argues that, because the arson charges and the obstruction charge were tried together, the evidence pertaining to marijuana "became admiss[i]ble" and the prejudicial effect of this evidence outweighed the probative value because "[t]here was no showing of any motive connecting the [m]arijuana and

drugs to the [a]rson and [c]onspiracy to commit [a]rson."  We

disagree.[4]

> The general rule is well established that in
> a criminal prosecution, proof which shows or
> tends to show that the accused is guilty of
> the commission of other crimes and offenses
> at other times, even though they are of the
> same nature as the one charged in the
> indictment, is incompetent and inadmissible
> for the purpose of showing the commission of
> the particular crime charged . . . .
> However, the exceptions to the general rule
> are equally as well established.  Evidence
> of other offenses is admitted if . . . it
> tends to prove any relevant element of the
> offense charged.  Such evidence is
> permissible in cases where the motive,
> intent or knowledge of the accused is
> involved, or where the evidence is connected
> with or leads up to the offense for which
> the accused is on trial.  Also, testimony of
> other crimes is admissible where the other
> crimes constitute a part of the general
> scheme of which the crime charged is a part.

Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802,

805 (1970) (citations omitted).

The evidence presented at trial established that at least

part of Sloan's motive for hiring Bledsoe to burn the houses,

and in aiding Bledsoe in burning them, was to prevent others

from moving into properties close to his own and "finding his

pot."  Thus, we conclude it was necessary and proper for the

Commonwealth to show the extent of Sloan's activities involving

---

[4] During the trial, Sloan failed to object to admission of
most of the evidence he now disputes until after it had already
been admitted and heard by the jury.

his marijuana operation in order to prove his motive and connection to the arsons.  This evidence was "so intimately connected and blended with the main facts adduced in evidence, that [it could not] be departed from with propriety; and there is no reason why the criminality of such intimate and connected circumstances, should exclude [such evidence], more than other facts apparently innocent."  Id. at 273, 176 S.E.2d at 806.

### IV.   Correction of the Indictments

Sloan finally argues that the trial court erred in allowing the Commonwealth to amend the conspiracy indictments after the jury had returned its verdict.  We have not previously addressed this issue.

"The function of an indictment . . . is to give an accused notice of the nature and character of the accusations against him in order that he can adequately prepare to defend against his accuser."  Morris v. Commonwealth, 33 Va. App. 664, 668, 536 S.E.2d 458, 460 (2000) (citations omitted).  Thus, Code § 19.2-220 requires the following:

> The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date.  In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the

> common law or statutory definition of the offense as is sufficient to advise what offense is charged.

Although it is fundamental that when a statute contains more than one grade of offense carrying different punishments, "the indictment must contain an assertion of the facts essential to the punishment sought to be imposed," Code § 19.2-220 does not require an indictment to affirmatively set forth the punishment for the offense. Moore v. Commonwealth, 27 Va. App. 192, 198, 497 S.E.2d 908, 910 (1998).

Here, the indictments clearly placed Sloan on notice of the nature and character of the accusations against him, as well as the facts essential to punishment. They also listed the code section under which punishment was sought. That code section, Code § 18.2-22, specifically provides that the offense is punished as a Class 5 felony, under the circumstances for which Sloan was charged. Thus, any reference in the indictment to the punishment for the offense was mere surplusage and did not render the indictment invalid. See Code § 19.2-226(9); see also Black v. Commonwealth, 223 Va. 277, 281-82, 288 S.E.2d 449, 451 (1982) (additional unnecessary language included in the indictment which is surplusage does not invalidate the indictment).

We reject Sloan's argument that Code § 19.2-231 bars the modification of the indictments. It is true that Code

§ 19.2-231 provides for amendment of an indictment "[i]f there be any defect in form . . ., or if there shall appear any variance between the allegations therein and the evidence offered in proof . . . at any time before the jury returns a verdict . . . ."  There was no defect in form in the conspiracy indictments here, nor was there any variance between the allegations listed and the evidence offered at trial.  The indictments contained the necessary language to put Sloan on notice of the nature and character of the accusations against him, as well as the facts essential to punishment.  The fact that the indictments contained surplus language, and were subject to a technical correction, did not render them defective and in need of a substantive amendment to sustain their validity.  We therefore find the court's action to be in the nature of a correction to remove incorrect or misleading surplusage rather than a substantive amendment subject to Code § 19.2-231.

Furthermore, Sloan has failed to establish that he was prejudiced either by the alleged error or by the court's action in correcting it.  Accordingly, even if we were to assume that the trial court erred in permitting the post-verdict corrections, any such error would have been harmless.

Affirmed.

- 9 -