COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Kelsey and Powell
Argued at Chesapeake, Virginia


KENTORA DELVONTAE ATKINS

                                                        OPINION BY
v.        Record No. 1864-09-1              JUDGE ROBERT P. FRANK
                                                      AUGUST 31, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles E. Poston, Judge[1]

Lenita J. Ellis for appellant.

Susan M. Harris, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on briefs), for appellee.


        Kentora Delvontae Atkins, appellant, was convicted, in a bench trial, of possession of

heroin, in violation of Code § 18.2-250, possession of a firearm while in possession of heroin, in

violation of Code § 18.2-308.4(B), and possession of a firearm by a convicted felon, in violation

of Code § 18.2-308.2.  On appeal, he contends the trial court erred in:  1) finding he had no

standing to challenge the search of the automobile in which he was a passenger; 2) denying his

motion to suppress the heroin and the gun; 3) finding the evidence sufficient to prove he

possessed the firearm while simultaneously in possession of heroin; 4) denying his motion to

dismiss the felony firearm indictment for containing a fatal variance; and 5) finding the evidence

sufficient to prove possession of a firearm by a convicted felon.  For the reasons stated, we

affirm.


_____
        [1] Judge Jerrauld C. Jones heard the motion to suppress.

BACKGROUND

Special Agent P.N. Gallaccio of the Virginia State Police and Norfolk Police Officer W.K. Winningear, on September 3, 2008, stopped a vehicle for a defective equipment violation because the license plate bulb was burned out. While the stop was in progress, appellant, the right rear passenger, "turned around" several times and Gallaccio lost sight of appellant's head "as if he was bending over in the seat."

After approaching the car, Gallaccio asked appellant for identification. Appellant stated that he had none. Gallaccio asked the front seat passenger for her identification, and she gave him a driver's license. Appellant then handed his license to Gallaccio. Gallaccio noticed that appellant did not appear nervous at that time. Gallaccio gave the licenses to Officer Winningear. It was then discovered that the front female passenger had outstanding warrants. For that reason, she was removed from the car. During this time, appellant was "constantly turning around and observing [the police] and [their] actions."

While appellant was still in the car, Gallaccio watched him as he tried to light a cigarette. Gallaccio observed that appellant was having difficulty doing so because he was "shaking unbelievably in his seat." Gallaccio testified, "in my 13 years of experience watching traffic stops, I'd never seen anybody struggle to light a cigarette as much as [appellant] did."

Winningear returned appellant's license to him and asked the driver for consent to search the vehicle. The driver did not consent. The officers told the occupants they were going to screen the vehicle with a drug dog.[2] At that point, the officers asked appellant and the driver to get out of the car.

After the driver got out of the vehicle, he and Officer Winningear engaged in a brief conversation before the driver abruptly retrieved his keys from the console and started the

_____

[2] Winningear, a canine handler, had his dog, Rock, with him at the time of the stop.

engine. In trying to keep the driver from leaving, Winningear struggled with the driver, and the driver fled. The driver was not apprehended that evening.

When appellant got out of the car, Gallaccio observed needle marks on appellant's arms. He also saw that appellant's hands were "balled up," there was "tension in his arms," and he appeared nervous. When asked why, appellant responded, "because cops around here beat people up for no reason." Appellant then placed his hands in his pockets. Gallaccio advised him to take his hands out of his pockets and that he was going to pat him down for weapons. Appellant was instructed to walk to the back of the police vehicle, but he continued to walk past that vehicle. When he was passing another police vehicle, Special Agent Gallaccio grabbed him by the back of his shirt because he "thought something was afoot." Gallaccio testified that he thought appellant was going to run. As Gallaccio grabbed him, appellant took his hands out of his pockets and dropped a white pill bottle that contained eleven capsules of heroin. After a brief struggle with appellant, Gallaccio placed appellant under arrest.

At the suppression hearing, Gallaccio testified without objection that he searched the vehicle "incident to arrest." He also testified at trial that he searched the car because the driver ran, so the car was going to have to be towed and he was "inventorying the vehicle."

Inside the car, the officers recovered one firearm from under the driver's seat. Another firearm was found in the back seat area under the right passenger seat. The barrel was facing forward "with the magazine port facing toward the right as if someone was sitting there and stuck it right there." Gallaccio testified that he believed it would have been visible to someone sitting in the rear passenger seat. A DNA test was performed on the gun found in the back seat area, and no DNA was recovered.

This appeal follows.

- 3 -

ANALYSIS

Standing

Appellant argues that the trial court erred in ruling that he did not have standing to challenge the illegal search of the vehicle and the seizure of the weapons. As a result of the court's ruling, reasons appellant, the guns recovered from the car were erroneously admitted into evidence. The Commonwealth argues that the trial court properly found that Rakas v. Illinois, 439 U.S. 128 (1978), prevents appellant, as a passenger, from challenging the search of the vehicle.[3]

At oral argument, we asked counsel to file supplemental briefs to address the applicability of Rakas and Brendlin v. California, 551 U.S. 249 (2007).

At the suppression hearing, the Commonwealth initially raised the argument that appellant, as a passenger, would not have standing to challenge the search of the vehicle pursuant to Rakas. Appellant agreed, stating that he has "very little standing to contest the search." The trial court, citing Rakas, ruled that appellant, as a passenger, could not challenge the search and recovery of the firearms. Appellant responded, "yes, sir." In a timely filed motion to vacate, appellant cited Brendlin and contended that contrary to the trial court's ruling, appellant does have standing to contest the search of the vehicle and the seizure of the weapon.

We agree with the trial court that Rakas controls. Rakas was a passenger in an automobile in which police found a box of rifle shells in a locked glove compartment and a sawed-off rifle under the front passenger seat. 439 U.S. at 130. The Supreme Court rejected Rakas' argument that simply being a passenger in the vehicle afforded him standing to contest

---

[3] The Commonwealth contends appellant failed to preserve the Brendlin v. California, 551 U.S. 249 (2007), issue for appeal by inviting error at the suppression hearing and by failing to comply with Code § 19.2-266.2 by raising the issue during a post-trial motion to vacate. Given our holding, we need not rule on these contentions.

- 4 -

the search of the vehicle.  Id. at 148.  Rakas neither owned nor leased the vehicle.  Id. at 140.

Significantly, the Supreme Court found Rakas "asserted neither a property nor a possessory

interest in the automobile, nor an interest in the property seized."  Id. at 148.  The Court then

concluded:

> Judged by the foregoing analysis, petitioners' claims must fail.
> They asserted neither a property nor a possessory interest in the
> automobile, nor an interest in the property seized.  And as we have
> previously indicated, the fact that they were "legitimately on [the]
> premises" in the sense that they were in the car with the permission
> of its owner is not determinative of whether they had a legitimate
> expectation of privacy in the particular areas of the automobile
> searched.
>
> \* \* \* \* \* \* \*
>
> But here petitioners' claim is one which would fail even in an
> analogous situation in a dwelling place, since they made no
> showing that they had any legitimate expectation of privacy in the
> glove compartment or area under the seat of the car in which they
> were merely passengers.  Like the trunk of an automobile, these
> are areas in which a passenger *qua* passenger simply would not
> normally have a legitimate expectation of privacy.

Id. at 148-49 (citations omitted).

Appellant argues Brendlin supports his position.  We find that his reliance is misplaced.

Brendlin does not address a defendant passenger's right to contest the search of the vehicle;

Brendlin addresses only a passenger's challenge to the stop itself.  The Supreme Court concluded

a passenger may bring a Fourth Amendment challenge to the legality of a traffic stop because the

passenger is seized as a result of the traffic stop.  Brendlin, 551 U.S. at 255.  The Court reasoned,

"A traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the

driver, diverting both from the stream of traffic to the side of the road . . . ."  Id. at 257.  The

Court added,

> If the likely wrongdoing is not the driving, the passenger will
> reasonably feel subject to suspicion owing to close association;
> but even when the wrongdoing is only bad driving, the passenger

will expect to be subject to some scrutiny, and his attempt to leave the scene would be so obviously likely to prompt an objection from the officer that no passenger would feel free to leave in the first place.

Id. By its own language, Brendlin does not address whether a passenger can challenge the legality of a search of the vehicle in which he is a passenger.

Appellant further cites Arizona v. Johnson, 129 S. Ct. 781 (2009), to support his contention. However, Johnson simply reiterates the Brendlin ruling that "[a] passenger therefore has standing to challenge a stop's constitutionality." Johnson, 129 S. Ct. at 787.

Under Rakas, we begin our analysis by noting that appellant bears the burden of proving that he has standing to assert the constitutional right. Abell v. Commonwealth, 221 Va. 607, 614, 272 S.E.2d 204, 208 (1980). In keeping with Rakas, "[t]he test is whether the appellant objectively had a reasonable expectation of privacy at the time and place of the disputed search." McCoy v. Commonwealth, 2 Va. App. 309, 311, 343 S.E.2d 383, 385 (1986). In determining whether an expectation of privacy is objectively reasonable, a court looks to the totality of the circumstances,

> "includ[ing] whether the defendant has a possessory interest in . . . the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises."

Id. at 312, 343 S.E.2d at 385 (quoting United States v. Haydel, 649 F.2d 1152, 1155 (5th Cir. 1981)). See also Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987) (discussing that defendant failed to meet his burden where he showed he had permission to be present in the place searched but did not have a key, did not keep property there, and could not exclude others), cert. denied, 484 U.S. 1036 (1988).

The Commonwealth argues, and we agree, that appellant asserted neither a property nor a possessory interest in the vehicle. Because appellant asserted a Fourth Amendment violation, it was his burden to show he had standing to challenge the search of the vehicle. At no point did he claim any interest in the vehicle or in the weapons found inside. From this record, it is clear that appellant did not own the vehicle and was in the vehicle to purchase heroin. All that appellant has shown is that he was a passenger in the vehicle.

Appellant contends Arnold v. Commonwealth, 17 Va. App. 313, 437 S.E.2d 235 (1993), modifies Rakas. We disagree. In Arnold, we held that a passenger had an expectation of privacy in a shopping bag found on the vehicle's floor at his feet. Id. at 316, 437 S.E.2d at 237. We distinguished Rakas in two respects. First, we found that in Rakas, the question was "a narrow one: Did the search of their friend's automobile after they had left it violate any Fourth Amendment right of the petitioners?" Id. We further distinguished Rakas because there, "the defendants asserted no interest in the property seized." Id.

Also of note in Arnold, Arnold never denied ownership of the items seized. In the instant case, unlike Arnold, appellant denied any interest in the weapon seized. While such a denial is not determinative of the issue, it clearly is a factor as part of the totality of the circumstances.[4]

Under a totality of the circumstances approach, we find appellant did not have standing to challenge the search of the vehicle. He made no showing that he had a possessory interest in the car, that he had the right to exclude others from the vehicle, that he had exhibited a subjective expectation that the vehicle and its contents would remain free from governmental invasion, that he exercised control over the vehicle, or that appellant took any precautions to maintain his privacy. As in Rakas, appellant has not shown he has a legitimate expectation of privacy in the

_____

[4] Because we find Arnold, 17 Va. App. 313, 437 S.E.2d 235, distinguishable, we do not address the impact, if any, Bell v. Commonwealth, 264 Va. 172, 563 S.E.2d 695 (2002), has on our analysis in Arnold.

area under the seat where the guns were located. Appellant was nothing more than a temporary passenger in another's vehicle.

Appellant's contention that simply being a legitimate passenger affords him an expectation of privacy was clearly rejected in Rakas. "[T]he fact that they were 'legitimately on [the] premises' in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched." Rakas, 439 U.S. at 148.

Since we conclude appellant failed to meet his burden, we do not address the legality of the seizure of the weapon in the vehicle. We find the trial court did not err in determining appellant had no standing to challenge the search of the vehicle and the seizure of the weapon.

### Duration of the Stop

Appellant argues that once his identification was returned to him, there was no justification to detain him further, reasoning that there was no independent reasonable suspicion to detain appellant once he left the vehicle. Appellant also contends that Officer Winningear had no further particularized information of ongoing criminal activity when he chose to have the car checked by a drug dog.[5]

Appellant cites a variety of cases in support of his position that the officers detained the occupants of the vehicle after the traffic stop had ended, thereby turning the detention into a non-consensual encounter.[6] Appellant's argument ignores the United States Supreme Court's

---

[5] This contention is moot, as the record does not reflect that any contraband was recovered as a result of the drug dog's presence at the scene.

[6] In both Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003), and Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000), cases cited by appellant in support of his position, the traffic stop had terminated when the officers continued the detention of the stopped vehicle's occupants. In each case, a reasonable person would not have known that the investigation of the traffic offense had ended and would not have felt free to

holding in Johnson, where the Court found that police officers may detain a driver and any

passengers "pending inquiry into a vehicular violation," without "cause to believe any occupant

of the vehicle is involved in criminal activity." Johnson, 129 S. Ct. at 784. The Court

recognized

> temporary seizure of the driver and passengers ordinarily
> continues, and remains reasonable for the duration of the stop.
> Normally, the stop ends when the police have no further need to
> control the scene, and inform the driver and passengers that they
> are free to leave. An officer's inquiries into matters unrelated to
> the justification of the traffic stop, this Court has made plain, do
> not convert the encounter into something other than a lawful
> seizure, so long as those inquiries do not measurably extend the
> duration of the stop.

Id. at 788.

Winningear estimated the entire encounter took between five and seven minutes,

including the time to process the female passenger with her outstanding warrants. Investigator

Glenn Gardiola, who was present at the traffic stop, explained:

> During the course of [the] traffic stop, I encountered a female in
> the vehicle who was later identified as [having] outstanding
> warrants in Nassau County [New York] and LA county
> [California]. . . . I was taking her off to the side and verifying the
> facts of the warrants making sure they were still active and still
> valid.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> As I was speaking to her and awaiting for verification for
> these warrants, I then observed Investigator Gallaccio and
> Investigator Measel in a physical struggle with [appellant] and at
> that time left my position to assist them in taking him into custody.

It is well established that a police officer making a routine traffic stop may order a

passenger out of the car for safety reasons, even if the officer has no reason to suspect the

passenger of criminal behavior. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). However,

---

disregard the officer's questions or have felt free to leave. Such is not the case here, and we do
not find these decisions persuasive in our analysis.

"when an officer makes a lawful traffic stop, the scope of the temporary detention may not exceed the purpose of the stop." Dickerson v. Commonwealth, 35 Va. App. 172, 177-78, 543 S.E.2d 623, 626 (2001) (citing Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion)), aff'd, 266 Va. 14, 581 S.E.2d 195 (2003).

Here, Gallaccio asked appellant to step out of the car while Invesstigator Gardiola was still in the process of verifying the outstanding warrants on the female passenger. Because Gardiola observed Gallaccio struggle with appellant before the warrant check was complete, the evidence clearly shows that Gallaccio's interaction with appellant occurred during the duration of the ongoing traffic stop, namely, securing the female passenger who had outstanding arrest warrants. It was not unreasonable for the officers to continue to detain appellant for a "reasonable period of time" awaiting the results of the warrant check on the female passenger. See Jones v. Commonwealth, 279 Va. 665, 674, 691 S.E.2d 801, 806 (2010) ("[T]he temporary continued seizure of [appellant] did not amount to an unlawful detention because determining [appellant's] true identity was within the scope of the unchallenged investigatory stop and was not unreasonable.").

We conclude that any detention of appellant was reasonable and took place while the investigation was ongoing, as the police had further need to control the scene. Johnson, 129 S. Ct. at 788. Further questioning of appellant or the driver regarding possession of contraband did not constitute an illegal detention in violation of the Fourth Amendment.

Fruit of the Poisonous Tree

Appellant claims that the drugs found in his possession should not have been admitted into evidence, as they were the "fruit of the poisonous tree," flowing from the unlawful search of the car. Appellant's argument presupposes that the search of the vehicle came first. Factually, this is incorrect.

"If evidence is seized during an illegal stop, it is not admissible at trial under the doctrine known as 'the fruit of the poisonous tree.'" Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004); see Wong Sun v. United States, 371 U.S. 471, 484-88 (1963) (excluding evidence obtained as the result of illegal police action). "'The exclusionary rule operates . . . against evidence seized and information acquired during an unlawful search or seizure . . . [and] against derivative evidence discovered because of the unlawful act.'" Watson v. Commonwealth, 19 Va. App. 659, 662, 454 S.E.2d 358, 360 (1995) (quoting Warlick v. Commonwealth, 215 Va. 263, 265, 208 S.E.2d 746, 748 (1974)).

Clearly, even if the search of the car was unlawful, which we do not decide, the drugs found on appellant did not flow from that search, but occurred prior to the search of the car. We cannot find, under these facts, that Gallaccio's recovery of the drugs was a fruit of the poisonous tree.

### Seizure of Appellant Outside the Vehicle

In the alternative, appellant contends that Special Agent Gallaccio did not have reasonable suspicion to seize him once appellant exited the vehicle.[7] Because of this illegal police action, argues appellant, the drugs should not have been admitted at trial. Because this issue does not involve a determination of whether appellant had standing to challenge the seizure and search of the vehicle, we address independently the seizure of his person.

When reviewing a trial court's denial of a motion to suppress, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law

---

[7] At the hearing on the motion to suppress the trial court ruled, "I don't believe that the Court can find today that the stop and seizure or the part that he does have the constitutional standing to challenge today was unlawful and in violation of his constitutional rights." From this statement, we conclude that the trial court ruled that appellant did have standing to challenge the seizure of his person after he exited the vehicle. Therefore, we address this issue.

enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error. McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541, 545 (2001). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search'" involve questions of both law and fact and are reviewed *de novo* on appeal. McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (quoting Ornelas, 517 U.S. at 691).

The Fourth Amendment prohibits only unreasonable searches and seizures. James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996). If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, he may detain the person to conduct a brief investigation without violating the Fourth Amendment's protection against unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 27 (1968). The reason for stopping an individual need not rise to the level of probable cause, but must be more than an "inchoate and unparticularized suspicion or 'hunch.'" Id.

"Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." Scott v. Commonwealth, 20 Va. App. 725, 727, 460 S.E.2d 610, 612 (1995) (citing Graham v. Connor, 490 U.S. 386, 396-97 (1989)). An officer is entitled to view the circumstances confronting him in light of his training and experience, Terry, 392 U.S. at 27, and he may consider any suspicious conduct of the suspected person, Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 86-87 (1987).

In this case, we conclude that Special Agent Gallaccio's investigatory detention of appellant was justifiable and based upon reasonable, articulable suspicion. While the traffic stop

- 12 -

was in progress, Gallaccio observed appellant bobbing up and down in the car as if he was bending over the seat. Then, appellant began to behave strangely as soon as he was removed from the car. His hands were balled into fists and he continued to move in circles, ultimately in the direction of the police vehicle. Appellant's arms indicated he was a heavy drug user; his manner was very nervous. He did not comply with Special Agent Gallaccio's request to remove his hands from his pockets. See Walker v. Commonwealth, 42 Va. App. 782, 792, 595 S.E.2d 30, 35 (2004) (finding appellant's refusal to remove his hand from his pocket is a factor to be considered in finding reasonable suspicion). Given appellant's behavior and demeanor, Gallaccio had objective facts sufficient to give him reasonable suspicion to stop appellant and investigate further.

### Due Process

In his questions presented one and two, appellant contends the trial court erred in finding the police did not violate his Fourteenth Amendment due process rights.

Rule 5A:20(e) provided, in part, that the opening brief shall include "[t]he principles of law, the argument, and the authorities relating to each question presented." "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). The Supreme Court concluded that "when a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (quoting Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)). "If the parties believed that the circuit court erred, it was their duty to present that error to [the Court of Appeals] with legal authority to support their contention." Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008). Because appellant provides no legal argument or authority in his brief to

support his argument, and we find this omission significant, appellant's claim that the trial court erred in not finding his due process rights were violated is waived under Rule 5A:20(e).

Sufficiency

Appellant next contends the evidence was not sufficient to prove he possessed the weapon found under the passenger seat of the car.

When addressing the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). In practical terms, a reviewing court does not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Stevens v. Commonwealth, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original), aff'd, 272 Va. 481, 634 S.E.2d 305 (2006). We ask only whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Kelly, 41 Va. App. at 257, 584 S.E.2d at 447). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

In accord with settled standards of appellate review, we view the evidence and all reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth, the party prevailing below. Yopp v. Hodges, 43 Va. App. 427, 430, 598 S.E.2d 760, 762 (2004).

Appellant contends the trial court erred in convicting him of possession of a firearm while in possession of heroin pursuant to Code § 18.2-308.4(B). Appellant's argument appears to be twofold. First, he reasons that the evidence was insufficient to establish he constructively possessed the firearm. In the alternative, he argues that even if he was in constructive possession of the firearm, a conviction pursuant to Code § 18.2-308.4(B) requires that he be in actual possession of the firearm. We disagree with appellant and find that appellant constructively possessed the firearm and was properly convicted under Code § 18.2-308.4(B).

Code § 18.2-308.4 provides in relevant part the following:

> A. It shall be unlawful for any person unlawfully in possession of a controlled substance classified in Schedule I or II of the Drug Control Act (§ 54.1-3400 et seq.) of Title 54.1 to simultaneously with knowledge and intent possess any firearm. A violation of this subsection is a Class 6 felony and constitutes a separate and distinct felony.

> B. It shall be unlawful for any person unlawfully in possession of a controlled substance classified in Schedule I or II of the Drug Control Act (§ 54.1-3400 et seq.) to simultaneously with knowledge and intent possess any firearm *on or about his person*. A violation of this subsection is a Class 6 felony and constitutes a separate and distinct felony and any person convicted hereunder shall be sentenced to a mandatory minimum term of imprisonment of two years. Such punishment shall be separate and apart from, and shall be made to run consecutively with, any punishment received for the commission of the primary felony.

(Emphasis added). "Where the General Assembly uses the word 'possess,' Virginia courts have typically held that proof of actual or constructive possession are both permissible." Hunter v. Commonwealth, 56 Va. App. 50, 58, 690 S.E.2d 792, 795 (2010). Therefore, by using the word "possess" in Code § 18.2-308.4, the General Assembly intended to "proscribe either actual or constructive possession of the firearm." Id.

Clearly, the evidence here does not prove actual possession, therefore our first inquiry is whether the facts support appellant's constructive possession of the weapon.

- 15 -

> "To establish constructive possession of the firearm by a
> defendant, the Commonwealth must present evidence of acts,
> statements, or conduct by the defendant or other facts and
> circumstances proving that the defendant was aware of the
> presence and character of the firearm and that the firearm was
> subject to his dominion and control.  While the Commonwealth
> does not meet its burden of proof simply by showing the
> defendant's proximity to the firearm, it is a circumstance probative
> of possession and may be considered as a factor in determining
> whether the defendant possessed the firearm."

Smallwood v. Commonwealth, 278 Va. 625, 630-31, 688 S.E.2d 154, 157 (2009) (quoting

Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)) (other citations

omitted).  Further, "[p]ossession and not ownership is the vital issue.  Possession may be joint or

several.  Two or more persons may be in possession where each has the power of control and

intends to exercise control jointly."  Burnette v. Commonwealth, 194 Va. 785, 792, 75 S.E.2d

482, 487 (1953).

Appellant was the only passenger in the back seat of the vehicle.  While the traffic stop

was in progress, Special Agent Gallaccio observed appellant turn around several times, then

bend over such that Gallaccio lost sight of appellant's head.  The firearm was located under the

seat in front of appellant with the magazine port "facing forward as if someone was sitting there

and stuck it right there."  In addition, Gallaccio testified that he believed it would have been

visible to someone sitting in the rear passenger seat.  This evidence, coupled with appellant's

nervous behavior, gave the trial court a reasonable basis to infer that appellant had knowledge

that the firearm was under the seat in front of him and that it was within his dominion and

control.

Turning to appellant's second argument, we now address whether appellant's

constructive possession of the firearm places him within subsection (B) of Code § 18.2-308.4.

The statute proscribes two separate offenses, each of which is defined therein as a Class 6 felony.

The offenses in subsections (A) and (B) are defined with almost identical language as the

unlawful possession of certain enumerated controlled substances while "simultaneously with knowledge and intent possess[ing] any firearm." Subsection (A) proscribes any such possession of a firearm, while subsection (B) proscribes such possession if the firearm is "on or about [the] person." Subsection (B) also provides a heightened penalty under those circumstances: "a mandatory minimum term of imprisonment of two years." "'There can be no dispute that the purpose of the legislation was to establish [different] categories of crimes relating to possession of controlled substances and firearms at the same time.'" Hunter, 56 Va. App. at 57, 690 S.E.2d at 795 (quoting Wright v. Commonwealth, 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009)).

Appellant contends that the additional language "on or about his person" contained in subsection (B) requires the Commonwealth to prove actual, not constructive, possession. The Supreme Court has long interpreted the phrase "about his person" to mean that a weapon must be "'so connected with the person as to be readily accessible for use or surprise, if desired.'" Pruitt v. Commonwealth, 274 Va. 382, 388, 650 S.E.2d 684, 686 (2007) (quoting Sutherland v. Commonwealth, 109 Va. 834, 835, 65 S.E. 15, 15 (1909)).

This Court addressed the same issue in Hunter, 56 Va. App. 50, 690 S.E.2d 792, and interpreted the language of subsection (B) to require either actual possession of the firearm, or constructive possession of the firearm in a vicinity about the person. Id. at 64, 690 S.E.2d at 799.

> In other words, the Commonwealth must prove beyond a reasonable doubt that the defendant, who possessed certain controlled substances, actually possessed the firearm "on . . . his person"; *or* that the defendant was aware of both the presence and character of the firearm, that the firearm was within the accused's dominion and control, and that the firearm was readily accessible for prompt and immediate use.

Id. at 65, 690 S.E.2d at 799 (emphasis in original).

In Hunter, appellant was a front seat passenger in a car that was subject to a traffic stop. While lawfully searching the vehicle, Deputy Onderko recovered a firearm in the locked glove

- 17 -

compartment. Id. at 55, 690 S.E.2d at 794. Hunter later told Onderko that he bought the gun in North Carolina for eighty dollars. Id. Appellant challenged his conviction pursuant to Code § 18.2-308.4(B) arguing that the firearm was not "on or about" his person. This Court found that even though Hunter constructively possessed the firearm, the General Assembly "intended 'to require something more than constructive possession' of the firearm in subsection (B)." Id. at 61, 690 S.E.2d at 797 (quoting Wright v. Commonwealth, 53 Va. App. 266, 280, 670 S.E.2d 772, 779 (2009)). We concluded that under the facts of that case, the evidence was insufficient to sustain Hunter's conviction pursuant to subsection (B). The Court reasoned that Hunter did not have a key to the locked glove compartment, therefore Hunter was not "so connected with the firearm 'for any appreciable period of time' so as to make the firearm 'so accessible . . . as to prompt and immediate use.'" Id. at 65, 690 S.E.2d at 799 (quoting Pruitt, 274 Va. at 388, 650 S.E.2d at 687).

Here, the facts support a contrary conclusion. The firearm, which was recovered from the back seat area under the right passenger seat, was visible to someone sitting in the rear passenger seat. The barrel was facing forward, and it appeared as though someone had just placed it there. The evidence proves that the firearm was "readily accessible for prompt and immediate use" to whoever was sitting in the passenger seat. Further, appellant was seen making furtive gestures in that seat, corroborating the fact finder's reasonable conclusion that he had immediate dominion and control over the weapon. At trial, Special Agent Gallaccio testified that he located the firearm under the passenger seat "as if it's in my hand and I placed it underneath the seat to the right." Pursuant to Hunter, we find that the trial court did not err in convicting appellant of possession of the firearm under Code § 18.2-308.4(B).

The Indictment

Appellant argues the trial court committed reversible error in convicting him of possession of a firearm by a convicted felon because a fatal variance existed between the amended indictment[8] and the proof offered at trial. In particular, he asserts that because the indictment omitted the words "within ten years" the indictment did not plead specific charging information that would demand a mandatory sentence upon conviction. Appellant asks that this indictment be dismissed, or in the alternative remand for re-sentencing.[9]

The Commonwealth contends appellant's fatal variance argument is waived because appellant agreed to the amended indictment that deleted the words "violent felony."[10]

While appellant's question presented contends there was a fatal variance between the indictment and the proof, the question presented also appears to challenge the sufficiency of the evidence as to possession of a firearm by a convicted felon. It is not clear if the sufficiency

---

[8] The amended indictment provides in part:

> On or about September 3, 2008, in the City of Norfolk,
> KENTORA DELVONTAE ATKINS did feloniously, knowingly
> and intentionally possess or transport a firearm, after having been
> previously convicted of a felony, under the laws of this
> Commonwealth, another state, the District of Columbia, the United
> States or any of its territories. Va. Code § 18.2-308.2.

[9] While appellant frames his argument as a "fatal variance" requiring the indictment to be dismissed, the proper analysis is whether a mandatory sentence is proper under the language of the amended indictment.

[10] The Commonwealth contends appellant invited this error by agreeing to the amended indictment at trial. Given our holding, we need not rule on this contention.

contention is an independent argument or simply part of the fatal variance contention.  Thus, we will address both issues separately.[11]

"'The function of an indictment . . . is to give an accused notice of the nature and character of the accusations against him in order that he can adequately prepare to defend against his accuser.'"  Sloan v. Commonwealth, 35 Va. App. 240, 246, 544 S.E.2d 375, 378 (2001) (quoting Morris v. Commonwealth, 33 Va. App. 664, 668, 536 S.E.2d 458, 460 (2000)) (other citations omitted).  Accordingly, Code § 19.2-220 provides:

> The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date.  In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged.

When a statute contains more than one grade of offense carrying different punishments, "'the indictment must contain an assertion of the facts essential to the punishment sought to be imposed.'"  Sloan, 35 Va. App. at 246, 544 S.E.2d at 378 (quoting Moore v. Commonwealth, 27 Va. App. 192, 198, 497 S.E.2d 908, 910 (1998)).  However, Code § 19.2-220 does not require an indictment to affirmatively set forth the punishment for the offense.  Id.

---

[11] Appellant's question presented asks:

> Did the trial court commit reversible error and/or abuse its discretion and/or commit plain error when it ruled that the evidence was sufficient to convict Defendant on the amended indictment of Possession of Firearm by Non-violent felon (18.2-308.2) because there was not sufficient evidence that Defendant possessed said firearm and/or because there exists a reversible error variance between the indictment and proof in that the amended indictment did not contain the words "within ten years" that would be required for the two year mandatory sentence that the court ruled it had to impose?

Appellant argues that because the amended indictment did not contain the words "within ten years" that would require a two-year mandatory sentence, the indictment did not allege specific information that would allow the trial court to convict and sentence him for a Class 6 felony with a mandatory sentence of two years imprisonment.

Code § 18.2-308.2(A) contains several distinct punishments. One who knowingly and intentionally possesses any firearm shall be guilty of a Class 6 felony. However, the same section requires a mandatory sentence if the person has previously been convicted of a violent felony or has been previously convicted of any felony within ten years. Our inquiry is whether the mandatory sentences are grades of the offense carrying different punishments or simply different punishments for the same offense.

This Court addressed and resolved this very issue in Thomas v. Commonwealth, 37 Va. App. 748, 561 S.E.2d 56 (2002). In Thomas, appellant was convicted of being in possession of a firearm as a convicted felon in violation of Code § 18.2-308.2. At trial, the Commonwealth introduced appellant's prior conviction for burglary, a violent felony. Although the indictment did not so state, the "sentencing guidelines" upon which the trial court based it sentence, referred to the burglary conviction as a "violent felony" that triggered a "mandatory minimum" period of incarceration prescribed by Code § 18.2-308.2. Appellant challenged the indictment, arguing that the indictment did not "specifically allege the existence of a previous 'violent felony' conviction as an element of the offense" necessary to result in the mandatory sentence. Id. at 754, 561 S.E.2d at 59.

The indictments in Thomas and in the instant case are almost identical. Thomas argued, as does appellant here, that the language requiring a mandatory sentence is a separate grade of offense that carries a different punishment. We rejected that argument in Thomas, concluding

that the mandatory sentencing provisions simply define punishments within the Class 6 felony range.  We explained:

> Defendant's argument, however, is belied by Code § 18.2-308.2(A), a statute intended to "prevent[ ] a person, who is known to have committed a serious crime in the past, from becoming dangerously armed, regardless of whether that person uses, displays, or conceals the firearm." Jones v. Commonwealth, 16 Va. App. 354, 358, 429 S.E.2d 615, 617, aff'd on reh'g en banc, 17 Va. App. 233, 436 S.E.2d 192 (1993).  The proscribed conduct, together with the attendant elements, is clearly defined in the initial sentence of the statute and punishable as "a Class 6 felony." Consistent with the intendment of the enactment, an accused having been previously convicted of a "violent felony" is subject to a period of mandatory incarceration, a sentence within the range of a Class 6 felony but beyond trial court discretion.  Contrary to defendant's contention, such disparate penalties do not spawn gradations of the offense.  The crime is not defined by the penalty.

Id. (other citations omitted).

Appellant seeks to distinguish Thomas from McKinley v. Commonwealth, 217 Va. 1, 225 S.E.2d 352 (1976), Hall v. Commonwealth, 8 Va. App. 350, 352, 381 S.E.2d 512, 513 (1989), and Moore, 27 Va. App. 192, 497 S.E.2d 908.  However, each of these cases involves grades of offense.  In Thomas, we distinguished these three cases on that basis.  Distinguishing Code § 18.2-308.2 from the statutes addressed in those three cases, we concluded, "[i]n each instance, unlike Code § 18.2-308.2, the legislature criminalized discrete *conduct*, oftentimes aggravated by a 'gradation or nexus crime,' but always differentiated both by elements and penalty." Thomas, 37 Va. App. at 755, 561 S.E.2d at 59 (quoting Commonwealth v. Smith, 263 Va. 13, 18, 557 S.E.2d 223, 225 (2002)) (emphasis in original).  Thus, we conclude the indictment need not allege the "within the prior ten years" language to authorize the imposition of a mandatory sentence.

Finally, appellant argues the evidence was insufficient to sustain his conviction for possession of a firearm as a convicted felon.  Code § 18.2-308.2 makes it unlawful for any

person who has been convicted of a felony to knowingly and intentionally possess or transport any firearm or ammunition for a firearm. Appellant argues that the evidence here was insufficient to sustain his conviction because he did not "knowingly and intelligently" possess the firearm. As discussed previously, we conclude that appellant constructively possessed the firearm because it was within appellant's immediate dominion and control, and therefore we found that he possessed the weapon within the meaning of Code § 18.2-308.4(B). Based upon the same rationale, we conclude that appellant also possessed the weapon for purposes of Code § 18.2-308.2. Because proof of appellant's prior 2001 felony conviction for distribution of imitation cocaine was admitted into evidence without objection, we find all the elements of Code § 18.2-308.2 were met and affirm appellant's conviction for possession of a firearm as a convicted felon.

CONCLUSION

For the foregoing reasons, we find that the trial court did not err in finding appellant guilty of possession of heroin, possession of a firearm while in possession of heroin, and possession of a firearm as a convicted felon. Accordingly, the trial court is affirmed.

Affirmed.