Filed 8/5/13  P. v. Whitmire CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DIOVANNI JERRELL WHITMIRE,<br><br>      Defendant and Appellant. | A130769<br><br>(Solano County<br>Super. Ct. No. VCR198777) |

Defendant Diovanni Jerrell Whitmire was convicted by a jury of murdering a convenience store clerk during the course of a robbery.  Whitmire's sole contention on appeal is that his conviction should be reversed because it was based on illegally seized evidence recovered from a vehicle in which he was a passenger.  Whitmire does not challenge the legality of the traffic stop but instead claims the search of the vehicle premised on the driver's probation status was unlawful.  Because Whitmire did not have a reasonable expectation of privacy in the vehicle that was searched, we reject his claim and consequently affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Procedural History*

The Solano County District Attorney filed an information charging Whitmire with murder while engaged in a robbery (Pen. Code, §§ 187, 190.2, subd. (a)(17)(A)) and second degree robbery (Pen. Code, § 211).  It was further alleged as to the murder count that Whitmire personally used a firearm during the offense within the meaning of Penal

1

Code sections 12022.5, subdivision (a)(1) and 12022.53, subdivisions (b), (c), and (d). Before trial, the district attorney dismissed the second degree robbery charge.

Whitmire's first trial ended in a mistrial after the jury was unable to agree on a verdict. Following a second trial, the jury found Whitmire guilty of first degree murder and found true the special circumstance that the murder was committed during the course of a robbery. The jury also found true the allegation pursuant to Penal Code section 12022.53, subdivision (d) that Whitmire personally and intentionally discharged a firearm proximately causing the victim's death. Because the murder was committed during the course of a robbery, the court sentenced Whitmire to prison for life without the possibility of parole. The court also imposed a consecutive term of 25 years to life for the firearm use enhancement.

*Facts*

At approximately 1:54 a.m. on February 8, 2008, Surinder Kumar, a night clerk at a 7-Eleven in Vallejo, was shot and killed during the course of a robbery. Video surveillance of the robbery showed two assailants entering the store. The faces of the assailants were not visible on the video.

The first assailant, who was the same height as Whitmire, approached the cash register and pointed a gun at Kumar. The gun was a distinctive chrome or stainless steel handgun with a long, narrow barrel, and was clearly visible on the video. The first assailant, who was not wearing gloves, was holding a plastic grocery bag in his left hand. He dropped the bag on the floor during the course of the robbery. The first assailant shot Kumar, who fell to the floor. Kumar was shot twice and died of his injuries. The assailants took approximately five cartons of Newport cigarettes and $80 in cash from the store. They left behind the plastic bag the first assailant had dropped on the floor.

Four days after the murder, a deputy sheriff on patrol in Vallejo stopped a vehicle that had expired registration tags. Joshua Lewis was driving the vehicle. Whitmire was sitting in the front passenger seat. After determining that Lewis was on probation, the deputy conducted a search of the vehicle. The deputy found two loaded handguns and a

2

plastic bag containing 65 rounds of .22-caliber ammunition on the floor of the vehicle under the front passenger seat.

The deputy arrested Whitmire and Lewis on weapons-related charges and transported them to jail.  They were subsequently released.  The deputy booked the guns into evidence at the sheriff's office.

Months later, in July 2008, one of the primary investigators in the murder case learned that fingerprints on the plastic bag recovered at the crime scene matched Whitmire's fingerprints.  Police arrested Whitmire.  Subsequently, in August 2008, the police were able to match additional fingerprints found on the plastic bag to those of Jovan Strong, Whitmire's codefendant, and Ineisha Elder, Strong's girlfriend.

Following Whitmire's arrest for the murder, police searched the apartment of Whitmire's cousin, Tashie Cooper.  Whitmire occasionally stayed at Cooper's apartment.  The day after the search, Cooper spoke to several officers at the Vallejo Police Department.  In a recorded statement, Cooper told officers that Whitmire had told her about the 7-Eleven robbery the morning after the incident.  Whitmire told Cooper he got between $50 to $60 and a large quantity of Newport cigarettes.  Whitmore also told her, " 'I popped the dude.' "  Police had not publicly disclosed the amount of money stolen or the fact that cigarettes had been taken during the robbery.

At trial, Cooper testified that she had lied in her recorded statement to the police.  She claimed she was drunk at the time she gave the statement, had not slept the night before, and was intimidated because the officers had threatened to have her removed from Section 8 housing if she failed to cooperate.  As a result of her fear of the police and anger at her cousin for putting her in a difficult position, she told the officers what she thought they wanted to hear.

Whitmire's arrest for the 7-Eleven shooting prompted one of the primary investigators to conduct a record check that revealed Whitmire had been involved in a February 2008 traffic stop in which guns were recovered.  The officer retrieved the guns from the evidence locker and sent to them to the crime lab for testing.  One of the guns appeared to be the same distinctive handgun seen on the surveillance video of the crime.

3

Testing revealed that shell casings recovered from the murder scene had been fired from a .22-caliber semiautomatic pistol recovered from under Whitmire's seat during the February 2008 traffic stop. Whitmire was a match for the only DNA profile found on the gun.

On the same night Whitmire was arrested for the 7-Eleven shooting, officers conducted a probation search at the home of Joshua Lewis, who had been driving the car on the night he and Whitmire were stopped in February 2008. Officers arrested Lewis. In a recorded statement at the police station, Lewis told the officers that the guns recovered in the February 2008 traffic stop did not belong to him. He stated that, as he and Whitmire were waiting to be transported to jail following the traffic stop, Whitmire told him, " 'There is a body on the gun.' " Lewis believed Whitmire was referring to the 7-Eleven shooting. Whitmire urged Lewis to say the gun was his and to take a plea deal in order to avoid a ballistics check and further investigation into the gun. Although Lewis agreed to talk to the officers, he told them he did not want to testify about what he had told them in front of a jury, because " '[t]hat's how people get killed.' " At trial, Lewis claimed he did not recall what he had told the officers that night.

Ineisha Elder testified at trial that she was living with Whitmire's codefendant, Jovan Strong, as of February 2008. When she was initially interviewed by police, she told them that Strong came into the bedroom at about 3:00 or 4:00 a.m. on February 8, 2008, carrying a plastic bag containing 30 to 40 packs of Newport cigarettes. At trial, Elder claimed not to recall what she told the police and said she was scared and felt threatened by the police during the interview.

## DISCUSSION

Whitmire's sole claim of error is that the trial court erred in denying his motion to suppress evidence seized in the February 2008 traffic stop. He contends the search violated his constitutional rights because the deputy searched the vehicle without knowing that the driver, Joshua Lewis, was subject to a search and seizure clause as a condition of his felony probation.

4

Whitmire claims the seized evidence, plus all evidence obtained as a result of the purportedly unlawful search, should have been excluded at trial. He argues the exclusionary rule requires suppression of the seized guns and ammunition, evidence that one of the seized guns fired the bullets found at the crime scene and that Whitmire's DNA was found on the gun, and testimony regarding statements made by Whitmire to Lewis as they were being transported to jail after the traffic stop. According to Whitmire, the prosecution's case was extremely weak without the gun evidence because the case would have relied almost entirely on fingerprint evidence taken from the plastic bag recovered at the scene and the statements of Tashie Cooper, Whitmire's cousin.

As we explain, because Whitmire did not have a reasonable expectation of privacy in the vehicle that was searched, he cannot challenge the introduction of evidence obtained in the allegedly unlawful search.

**1.** *Background*

Whitmire filed a motion to suppress to be heard at the preliminary hearing. He objected to the February 2008 search of the vehicle driven by Joshua Lewis, arguing that the stop for expired registration was unlawful because the deputy should have seen temporary registration documents affixed to the rear window. He also contended the subsequent probation search was invalid because the deputy was not told that Lewis had a search and seizure clause as a term of his probation.

At the preliminary hearing, a deputy sheriff testified that he was patrolling in Vallejo at about 10:00 p.m. on February 12, 2008. He saw a vehicle with expired registration tags and asked the dispatcher to confirm whether the registration had expired. After the dispatcher advised the deputy that the vehicle's registration expired in December 2007, the deputy conducted a traffic stop. As the deputy approached the car from behind, he did not see any form of temporary registration taped to the window. According to the deputy, "nothing stood out as registration or a . . . registration place, I did not see any of that information on the window."

Joshua Lewis was in the driver's seat and Whitmire was in the front passenger seat of the vehicle. The deputy asked the dispatcher to run a records check on the driver and

the passenger. The dispatcher told the deputy that Lewis was on active felony probation for drug and weapons offenses. Both the dispatcher and the deputy testified that the dispatcher told the deputy that Lewis had a search and seizure clause as a term of his probation. The deputy proceeded to search the vehicle. He located two handguns and 65 rounds of ammunition "[o]n the floorboard of the front, right passenger seat."

At the prosecutor's request, the magistrate took judicial notice of the terms of Lewis's probation, which included a clause for "search and seizure of person, real or personal property, automobile or any object under his control."

Whitmire's counsel called the owner of the vehicle to testify on his behalf. The vehicle's owner, who was Lewis's girlfriend at the time, testified that her father bought the car for her on January 30, 2008. She claimed she put a temporary registration slip in the right rear window of the vehicle at the time she bought it. The dealer who sold her the car testified that he prepared the temporary registration slip but did not know what the purchaser did with it.

The dispatcher brought to the preliminary hearing a tape recording of the communications between the dispatcher and the sheriff's deputy concerning the February 2008 traffic stop. Whitmire's counsel asked the magistrate to review the tape recording and also made available to the magistrate a transcript of the tape recording plus an index of the communications between the dispatcher and the deputy.[1]

The magistrate took a break in the preliminary hearing to listen to the dispatch recording. Following the break, the magistrate pointed out that it was "somewhat difficult" to follow the recorded conversation because "it jumps around a little bit." Nevertheless, the magistrate noted that while the dispatcher conveyed Lewis's probation status to the deputy, there was no mention of the search and seizure term of Lewis's probation. According to the magistrate, the deputy "operated under the assumption [Lewis] was on search and seizure," because shortly after the dispatcher conveyed Lewis's probation status, the deputy said, " 'I'll be on search.' "

---

[1] As far as this court is aware, neither the tape recording, the transcript of the recording, nor counsel's index of the recording is a part of the record on appeal.

6

Whitmire's counsel argued that the dispatch tape recording was inconsistent with the deputy's testimony that the dispatcher had informed him that Lewis was subject to a search and seizure condition as a term of his probation. In response to a question raised by the magistrate about whether Whitmire could object to a search of a vehicle not owned by Whitmire or Lewis, defense counsel argued that Whitmire had standing to challenge an illegal probation search directed at Lewis because passengers in vehicles that are stopped by the police are considered detained.

The prosecutor argued that Whitmire lacked standing to object to a probation search of a vehicle driven by Lewis. According to the prosecutor, the legal authority relied upon by Whitmire does not afford passengers in vehicles standing to object to a probation search directed at the vehicle's driver. The prosecutor also pointed out that the deputy had the right to detain Whitmire during the pendency of the traffic stop for officer safety.

The magistrate denied the motion to suppress. In ruling on the motion, the magistrate found "no problem with the traffic stop" based upon the deputy's observations and the dispatcher's confirmation of the vehicle's registration status. As for whether the deputy knew about the search and seizure condition before conducting the probation search, the magistrate agreed with Whitmire's counsel about the "exact verbiage that is on the dispatch tape." Nevertheless, the magistrate found the deputy to be credible and did not think he was trying to be deceptive or dishonest. According to the magistrate, the deputy acted under the assumption that Lewis's felony probation included a search and seizure condition, which was confirmed by the actual terms of his probation. The magistrate concluded the search was reasonable. The magistrate's ruling did not address whether Whitmire had standing to object to the probation search, or, put another way, whether he had a reasonable expectation of privacy in the vehicle that was searched.

After the magistrate denied the suppression motion, Whitmire moved to renew the motion before the trial court pursuant to Penal Code section 1538.5, subdivision (i). Whitmire relied on the preliminary hearing transcript as the factual basis for the renewed motion to suppress. The trial court denied the motion.

7

**2.** *Standard of Review*

"Where, as here, a motion to suppress is submitted to the superior court on the preliminary hearing transcript, 'the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness.' [Citation.] 'We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' " (*People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.) "The trial court's ruling may be affirmed if it was correct on any theory, even if we conclude the court was incorrect in its reasoning." (*People v. Durant* (2012) 205 Cal.App.4th 57, 62.)

**3.** *Analysis*

The People argue that Whitmire is not entitled to relief because he had no reasonable expectation of privacy in the vehicle that was searched. We agree.

It is well settled that an individual cannot challenge the introduction of evidence obtained in an allegedly unlawful search unless that individual had a reasonable expectation of privacy in the object seized or the place searched. (*Rakas v. Illinois* (1978) 439 U.S. 128, 143, 148 (*Rakas*); *People v. Valdez* (2004) 32 Cal.4th 73, 122; *People v. Jenkins* (2000) 22 Cal.4th 900, 927; *People v. Hoag* (2000) 83 Cal.App.4th 1198, 1203.) " ' Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicarious asserted.' [Citations.] A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. [Citation.] And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, [citation], it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." (*Rakas, supra,* 439 U.S. at pp. 133-134, fn. omitted.)

8

The defendant bears the burden of establishing a legitimate expectation of privacy in the area searched or the object seized. (*Rakas, supra,* 439 U.S. at pp. 130-131, fn. 1; *People v. Jenkins, supra,* 22 Cal.4th at p. 972.)  The mere fact a person is legitimately present in a vehicle or on premises that are searched, without more, is insufficient to establish a reasonable expectation of privacy. (*Rakas, supra,* 439 U.S. at pp. 143, 148; *People v. Koury* (1989) 214 Cal.App.3d 676, 686.)

In *Rakas,* the United States Supreme Court held that passengers in a car did not have a reasonable expectation of privacy in the glove compartment and the area under the front passenger seat where rifle shells and a sawed-off rifle were found. (*Rakas, supra,* 439 U.S. at pp. 130, 148.)  Similarly, in *People v. Valdez,* our Supreme Court concluded that a defendant who could establish no more than that he was a passenger in a vehicle could not challenge the seizure of a gun found under the driver's seat because the passenger lacked a reasonable expectation of privacy in the area searched. (*People v. Valdez, supra,* 32 Cal.4th at p. 122.)

This case is indistinguishable from *Rakas* and *People v. Valdez.*  The evidence presented at the preliminary hearing established the vehicle was owned by Lewis's girlfriend, who gave him permission to drive it.  As a mere passenger, Whitmire had no reasonable expectation of privacy in the areas of the vehicle that were searched.  Further, he made no attempt to establish a possessory or other interest in the guns and ammunition found under his seat sufficient to establish a reasonable expectation of privacy in the items that were seized.

Whitmire's claim that the deputy conducted the probation search without confirming the existence of a search and seizure probation condition is irrelevant to the question of whether Whitmire had a reasonable expectation of privacy in the area searched.  Further, even if the probation search were unlawful for the reason Whitmire claims, the person whose Fourth Amendment rights were violated as a result of that unlawful search was the probationer, Lewis.  Because Fourth Amendment rights are personal and may not be vicariously asserted (*Rakas, supra,* 439 U.S. at pp. 133-134), Whitmire cannot challenge the validity of a probation search premised on the terms of

9

another person's probation unless he can establish a violation of *his* Fourth Amendment rights.

Whitmire contends that, by ruling on the merits of the suppression motion, the magistrate implicitly rejected the argument that he lacked standing to challenge the search. The record reflects that the magistrate denied the suppression motion on alternate grounds and did not expressly consider whether Whitmire had a reasonable expectation of privacy in the searched vehicle. Even if the magistrate implicitly found Whitmire had a reasonable expectation of privacy in the vehicle, the evidence before the magistrate was insufficient to support such a conclusion. There was no evidence to indicate Whitmire was anything other than a passenger in the vehicle. Consequently, we are not bound to accept an implied factual finding unsupported by the evidence.

Whitmire's reliance on *Brendlin v. California* (2007) 551 U.S. 249 (*Brendlin*) is misplaced. In *Brendlin,* the United States Supreme Court held that a passenger is seized within the meaning of the Fourth Amendment when an officer stops a vehicle. (*Id.* at p. 251.) Thus, a passenger in a vehicle is entitled to challenge the constitutionality of the traffic stop. (*Ibid.*) However, that is an entirely different inquiry from whether a passenger can challenge a purportedly unlawful search of a vehicle following a *lawful* traffic stop.

In *United States v. Cortez-Galaviz* (10th Cir. 2007) 495 F.3d 1203, 1205, fn. 3, the court "clarified that *Brendlin* does not mean that passengers have standing to challenge every search of the vehicle in which they are riding." (*United States v. Martinez* (D. Kan. 2008) 537 F.Supp.2d 1153, 1156.) "A passenger's standing to object to a search of the vehicle thus remains subject to the *Rakas* analysis." (*Ibid.*) In *Atkins v. Commonwealth* (2010) 57 Va.App. 2 [698 S.E.2d 249], the court considered a defendant's argument that *Brendlin* afforded him standing as a passenger to object to a search of a vehicle stopped because a license plate lightbulb was burned out. (*Id.* at p. 8.) In rejecting the argument, the court reasoned as follows: "*Brendlin* does not address a defendant passenger's right to contest the search of the vehicle; *Brendlin* addresses only a passenger's challenge to the stop itself. . . . [¶] . . . [¶] By its own language, *Brendlin* does not address whether a

passenger can challenge the legality of a search of the vehicle in which he is a passenger." (*Atkins, supra,* at p. 8.) The court proceeded to consider the facts under *Rakas* and determined the defendant lacked a legitimate expectation of privacy in an area under the seat where guns were found. (*Atkins, supra,* at pp. 8-9.)

In this case, the magistrate concluded the traffic stop was lawful based upon the evidence presented at the preliminary hearing. Whitmire does not challenge that ruling on appeal.[2] Instead, his sole argument is that the subsequent probation search was unlawful. Consequently, *Brendlin* is inapplicable. Although he may have been seized within the meaning of the Fourth Amendment when the vehicle was stopped, that seizure was lawful. The evidence he seeks to suppress was not the product of an illegal traffic stop. Rather, the evidence was obtained as the result of a purportedly unlawful probation search, which is an event distinct from the traffic stop for purposes of a Fourth Amendment analysis. As we have explained, Whitmire has no standing to challenge the probation search under *Rakas* because he lacked a reasonable expectation of privacy in the vehicle that was searched.

Whitmire next contends he was unlawfully seized during the probation search because he was ordered out of the vehicle. We disagree. It is well settled that an officer may order a passenger out of a vehicle during a lawful traffic stop as a precautionary measure even though the officer may have no reasonable suspicion the passenger poses a safety risk. (*Brendlin, supra,* 551 U.S. at p. 258.) Because the traffic stop here was lawful, Whitmire cannot complain that his removal from the vehicle transformed a lawful detention into an unreasonable seizure.

Finally, Whitmire argues that a recent decision of the California Supreme Court, *People v. Schmitz* (2012) 55 Cal.4th 909, supports the view that vehicle passengers do not

---

[2] Even if Whitmire had challenged the lawfulness of the traffic stop on appeal, we would reject the claim. There was substantial evidence to support the magistrate's finding that the deputy had reasonable cause to stop the vehicle for having expired registration tags. Although the owner of the vehicle testified that she placed temporary registration documents in the rear window of the vehicle, the deputy's testimony constituted substantial evidence that no such temporary registration was posted or visible.

give up all reasonable expectation of privacy in the vehicle. The case is inapposite. *Schmitz* addressed the constitutional limits of a vehicle search based on the passenger's status as a parolee. (*Id.* at p. 913.) The decision turned in part on whether the *driver* had a reduced expectation of privacy in the vehicle in light of the *passenger's* status as a parolee. (*Id.* at pp. 922-924.) The court concluded a driver has a reduced expectation of privacy in a vehicle that is further diminished when the driver allows passengers to ride in the car. (*Id.* at p. 924.) Insofar as the court observed that a passenger might feel free to stow personal items in the car (*id.* at p. 925), the observation related to the permissible scope of a search premised on the passenger's parole status and not to the passenger's reasonable expectation of privacy in the vehicle. Thus, *Schmitz* does not aid Whitmire.

Because Whitmire had no reasonable expectation of privacy in the searched vehicle or the seized items, we conclude he is not entitled to challenge the purportedly unlawful probation search of the vehicle. Consequently, there is no need to address whether the deputy's search of the vehicle was objectively reasonable under the Fourth Amendment based upon what the deputy knew at the time.

## DISPOSITION

The judgment is affirmed.

_____
McGuiness, P. J.

We concur:

_____
Pollak, J.

_____
Jenkins, J.