UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges O'Brien, Russell and Senior Judge Clements
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                             MEMORANDUM OPINION* BY
v.        Record No. 0962-19-3               JUDGE WESLEY G. RUSSELL, JR.
                                                   NOVEMBER 12, 2019

JARED WILLIAM STANLEY


                FROM THE CIRCUIT COURT OF WISE COUNTY
                          Chadwick S. Dotson, Judge

          Victoria Johnson, Assistant Attorney General (Mark R. Herring,
          Attorney General; Mason D. Williams, Assistant Attorney General,
          on briefs), for appellant.

          C. Adam Kinser (Kinser Law PLC, on brief), for appellee.


       Pursuant to Code § 19.2-398(A)(2), the Commonwealth of Virginia appeals the circuit

court's pretrial order granting Jared William Stanley's motion to suppress certain evidence that

was discovered in the course of examining Stanley's electronic devices, which were seized by

police subsequent to an unrelated arrest of Stanley.

       Based on evidence found on the electronic devices, Stanley is charged with ninety-nine

counts of possession of child pornography in violation of Code § 18.2-374.1:1.[1]  Despite the fact

that the seizure and examination of the electronic devices occurred after police had obtained

search warrants authorizing the same, the circuit court granted Stanley's motion to suppress the

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] For one of the images, Stanley is charged with possession of child pornography in
violation of Code § 18.2-374.1:1(A), a Class 6 felony.  For the other ninety-eight images, he is
charged with possession of child pornography, second or subsequent offense, in violation of
Code § 18.2-374.1:1(B), a Class 5 felony.

digital evidence that was recovered from the devices. For the reasons that follow, we conclude that the circuit court erred in suppressing the evidence, reverse the judgment of the circuit court regarding the evidence discovered as a result of the May 10, 2018 search warrants, and remand the matter for further proceedings consistent with this opinion.

## BACKGROUND

When reviewing a circuit court's decision to grant a motion to suppress evidence, we view the facts in the light most favorable to the prevailing party below, in this case Stanley, and grant him all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067 (1991).

On May 8, 2018, officers with the Big Stone Gap Police Department served a warrant and protective order on Stanley, who was staying in a hotel room. Officers knocked on his door, and, when Stanley opened the door, Officer Robert Smith immediately detected "a strong odor of marijuana coming from the room" and observed a "very large amount of marijuana" on the bed inside the room.[2] Officers then detained Stanley, handcuffed him, and placed him in a chair inside the room. Stanley was read his Miranda rights and gave the officers consent to search his room. Smith located various smoking devices and methamphetamine inside a backpack. He also saw "dolls and little girls' stuff everywhere in the room." Also located in the room were several electronic devices, including phones, laptops, and several thumb drives (collectively the "electronic devices").

According to Smith, Stanley claimed all the marijuana in the room and the backpack were his, but the methamphetamine inside the backpack was not. He stated that none of the

---

[2] Smith did not testify in person at the motion to suppress hearing. By agreement of the parties, a transcript of his testimony from the preliminary hearing was offered in lieu of his appearance.

electronic devices belonged to him.  He also advised that "none of the dolls or baby stuff was his. It was all from friends from a rave party."

Lieutenant Mark Jones arrived to assist in processing the scene.  He testified that he observed several electronic devices such as thumb drives and laptops.  He also saw "baby doll heads with panties pulled over them, children's clothes, toys, things like that."

After his arrest, and as officers were transporting Stanley to the magistrate's office, Stanley expressed concern to Smith regarding the seizure of the electronic devices and "kept asking over and over if [Jones] [was] taking his electronic devices . . . ."  Stanley informed Smith that "if [Jones] gets a hold of those devices, I'm done, so if I get bond, I'm running."  He also stated, "I know what's on them, but they're not mine."

On May 10, 2018, Jones sought and obtained eighteen search warrants, one for each device, for the various electronic devices found in Stanley's hotel room.  He described the items sought to include "[p]ictures, stored data, to include video of drug transactions, names and addresses of customers, contacts and data related to children - nude, semi nude or engaging in sexual acts[.]"  Jones provided the following averment in support of each of the eighteen search warrant applications:

> I am a [lieutenant] with the Big Stone Gap Police [Department with] 28 [years] of [experience] working numerous fraud, theft and drug cases.  During those years it has become clear that persons who buy, [sell,] and traffic in illegal substances keep calendars, names and addresses of those customers on their cell phones and often record and photograph those sales.  They also use [cell] phones as the primary tool in communicating with their suppliers, customers and other drug dealers.  They also use other types [of] electronic media to save contacts and drug sales and inventory. Statements made by Jared William Stanley indicated that the dolls dressed as little girls and bottles and pacifiers were used for sexual gratification involving a sexual [fantasy involving] small children. He stated that he and his friends would get high at "rave parties" and just stare at the dolls dressed in little girl panties for sexual reasons.  He stated if he was given a bond he would disappear

because of what we would find on the cell phones, thumb drives, and computers.[3]

After executing the search warrants on May 10, 2018, Jones began to review the data on Item 10, a thumb drive.[4] He noted that "[d]uring the search of Item 10, a USB thumb drive, it showed that the suspect is wearing female undergarments and his penis covered in a child[']s sock." Coupled with what Jones previously had observed in Stanley's hotel room, this new information led Jones to seek yet another search warrant for the hotel room. The warrant application sought permission to search the hotel room again and allow for the seizure and inspection of "clothing of a child, toys that a child would play with, items of clothing or devices to restrain a child, drugs used to sedate a child, [and] any device that can store, record, or copy images of child porn." In the affidavit supporting the new warrant application, Jones averred that he previously had

> executed 18 search warr[a]nts on a Jared William Stanley for various electronic devices. During the search of Item 10[,] a USB thumb drive[,] it showed the suspect wearing female undergarments and his penis cover[e]d in a child[']s sock. . . . I had [previously] observed these clothing items lying around Room 32 Country Inn. Based on the search of the thumb drive I believe that there are more devices hid away in the room that contain child porn. During the [previous] search of the room . . . I observed and photographed children[']s toys, bottles and clothing that at the time didn't seem criminal, until I viewed Item 10, thumb drive, that displayed the suspect wearing these items and [thought] of his sexual fanta[s]y about children.

The new search warrant was issued on May 11, 2018 and was executed in the normal course.

---

[3] The images giving rise to the child pornography charges were found on the electronic devices that were the subject of the initial eighteen warrants.

[4] Jones explained that he began his review with one of the thumb drives because he "didn't want to tamper with the phones at all because there's ways of [accidentally] wiping those things if you don't hit them a certain way, a code. . . . The easiest and the first thing that I seized was item number 10, [a thumb drive,] so that's the first thing I looked at."

- 4 -

Stanley moved to suppress the evidence discovered and seized pursuant to the warrants. In his written motion, he sought suppression of

> all evidence seized, both oral and physical, and any property seized as a result of the arrest, detention, or interrogation of [Stanley] and in the search of [his hotel room] and the seized electronic devices . . . and . . . the fruits of such searches and seizures, including but not limited to an[y] statements made by [Stanley].

In his motion, Stanley asserted suppression was appropriate because the affidavits supporting the warrants failed to establish probable cause, the warrants failed to sufficiently specify the items to be seized, the affidavits contained assertions by Jones that Stanley alleged were unknown to Jones at the time he made the affidavits, and that an insufficient inventory of what was seized was filed regarding the initial warrants.[5]

During the hearing on his motion to suppress, Stanley argued that nothing in Jones' affidavits supporting the May 10 and 11 warrants provided a basis for concluding that there was probable cause to search either the electronic devices or the room for child pornography; however, he appeared to concede that there was probable cause to allow the officers to search the room and electronic devices for evidence related to drug crimes. Specifically, after noting that "[t]he motion to suppress only encompasses the child pornography charges[,]" Stanley

---

[5] The inventory for each of the eighteen search warrants pertaining to eighteen specific electronic devices stated: "pending forensic exam[.]" Because Jones had obtained individual warrants for each individual device, the warrants specifically detailed the item to be searched, which necessarily included the electronic contents of the electronic devices. See Code § 19.2-53(B) ("Any search warrant issued for the search and seizure of a computer, computer network, or other device containing electronic or digital information shall be deemed to include the search and seizure of the physical components and the electronic or digital information contained in any such computer, computer network, or other device."). Thus, it was clear which devices had been seized and searched from the face of each warrant; only the electronically-stored contents that eventually were discovered were unknown from the respective inventories. In any event, the circuit court expressly declined to rule on Stanley's inventory argument, finding that any such ruling was mooted by the circuit court granting the motion to suppress on other grounds. Accordingly, there is no ruling on that issue before us. But see West v. Commonwealth, 16 Va. App. 679, 692 (1993).

acknowledged that the officers "did have probable cause to search for the drugs." Then, referring to his statement "that if . . . given a bond he would disappear because" of what would be found on the electronic devices, Stanley argued the statement "doesn't give you probable cause to search for pornography that you never had probable cause to search for to begin with, *especially in light of the fact the reason you got the warrants was to search for the drugs and the calendars, names, addresses, videos, photographs, drugs, and inventories*" associated with drug transactions. (Emphasis added).

In response, the Commonwealth argued that the affidavits for the May 10 search warrants provided probable cause "under two separate theories at the same time, one for the drugs and one for the child pornography." Although it argued that the affidavits supplied sufficient probable cause under the child pornography theory, the Commonwealth noted that the eighteen search warrants and subsequent seizure and examination of the electronic devices would be legitimate even if there were insufficient probable cause under the child pornography theory so long as there was probable cause under the drug theory. The Commonwealth, relying on the affidavits and what it characterized as the issue having been "conceded by" Stanley, argued that the warrant applications provided probable cause for the electronic devices to be searched for photographic and other files related to drug transactions. As the Commonwealth explained, if the officers were authorized to search all of the files on the electronic devices for evidence related to drug transactions, they were not required to ignore items that were "obviously criminal . . . [such] as a young child being photographed in the nude or being photographed or videoed in a sexual act" that they discovered while conducting the drug-related search. They were not required to "skip" over or "gloss by" such an image "simply because it's not a drug text or a drug-related text."

In responding to the Commonwealth's argument, Stanley did not take issue with the Commonwealth's statement that he had conceded that sufficient probable cause existed to support the issuance of the warrants allowing the electronic devices to be examined for evidence related to drug-related crimes.[6] Rather, he argued that, if, during the search of the electronic devices for evidence related to drug crimes officers encountered evidence of unrelated crimes, the "Constitution requires them to . . . stop" the investigative activity and "go get another search warrant" that specifies a search related to the unrelated crime before continuing the investigation.

At the conclusion of the hearing, the circuit court took the matter under advisement. The circuit court issued an order on June 11, 2019. In the order, the circuit court characterized the inquiry as whether the "[f]acts set forth in an affidavit given to support the issuance of a search warrant . . . establish a nexus between the place to be searched and the criminal activity in question." (Internal quotation marks and citation omitted).

The circuit court expressly found that the May 10 search warrants were supported by sufficient probable cause related to the drug investigation. Referencing the portions of the affidavits detailing Jones' experience in investigating drug crimes and his statements that those involved in the drug trade often store incriminating photographs and other evidence of drug crimes on electronic devices, the circuit court found that the May 10 search warrant affidavits "provided a proper nexus to search the electronic devices for pictures, stored data, and names and addresses of customers related to the distribution of illegal substances." In short, the circuit

_____

[6] Despite the statements made at the suppression hearing and the lack of any response at that hearing to the Commonwealth's characterization of those statements as conceding the issue, Stanley stated at oral argument in this Court that he has always maintained that the search warrant affidavits provided insufficient probable cause to justify the warrants under either the drug or child pornography theories. Given that the circuit court did not rely on Stanley conceding the issue in its ruling, we need not address the potential discrepancy on appeal.

court concluded that the officers' search of the electronic devices for evidence of drug crimes was duly authorized and did not violate the Fourth Amendment.

Despite already having found the warrants sufficient to allow officers to search the electronic devices for evidence of drug crimes, the circuit court next addressed the validity of the May 10 warrants as they related to searches for child pornography. Regarding the May 10 search warrant affidavits, the circuit court found that they

> did not provide a proper nexus between the offense and the search for data related to child pornography. The statements in the affidavit did not allege that [Stanley] possessed child pornography, and provided no facts to support such an inference. No connection was made between [Stanley]'s statements regarding his activities at the rave parties and the possession of child pornography. In addition, there was nothing in the affidavit to indicate that Lieutenant Jones had knowledge and experience that individuals who behaved in such a way would possess child pornography, and that the child pornography would be in Room 32 and on the electronic devices found therein.

As a result of these findings, the circuit court concluded that "the search warrant for data related to child pornography substantially lacked probable cause, violating [Stanley]'s Fourth Amendment rights."

Turning to the basis for the May 11 search warrant, the circuit court reached a similar conclusion. Specifically, the circuit court found that "no statement" in the affidavit connected the new information, the image of Stanley wearing female undergarments and his penis covered in a child's sock, "to the conclusion that images of child pornography and items related to the restraint and sedation of a child would be found[.]" The circuit court further found that nothing in the affidavit suggested how "the children's toys and clothing were relevant to the child pornography offense."

As a result of its finding that the search warrants were not supported by probable cause related to the child pornography offenses, the circuit court ordered that "[t]he fruits of the May

10 warrant[s] as it pertains to the items found related to the child pornography charges and the fruits of the May 11 warrant [are] excluded from evidence." The circuit court also rejected the Commonwealth's argument that the good faith exception applied.

In issuing its order, the circuit court did not provide for the endorsement of counsel. Accordingly, on June 11, 2019, the same day the circuit court issued its order, the Commonwealth filed with the clerk of the circuit court a written objection to the order. The next day, June 12, 2019, the parties appeared before the circuit court so that the Commonwealth could ensure that the circuit court was aware of its objection and to address scheduling matters. At that time, the Commonwealth announced its intention to appeal the circuit court's ruling on the motion to suppress. On June 12, 2019, the transcript of the suppression hearing and the transcript of the June 12 hearing were filed with the circuit court clerk.[7]

On June 13, 2019, the Commonwealth filed its notice of appeal with the circuit court clerk. On June 20, 2019, the Commonwealth filed a petition for appeal in this Court. The petition asserted five assignments of error. The first addressed the May 10 search warrants, asserting that the circuit court erred in suppressing the evidence resulting from the search of the electronic devices given the circuit court's own "ruling that there was a 'proper nexus to search the electronic devices for pictures . . . related to the distribution of illegal substances.'" The second, which also addressed the May 10 search warrants, asserted that the circuit court erred in concluding that the search warrant affidavits did not "provide[] probable cause that child pornography was present on the electronic storage devices" subject to the warrants. The third and fourth assignments of error, which addressed the May 11 search warrant, asserted for the first time that Stanley lacked standing to challenge the validity of the search warrants and that the

---

[7] In addition to the transcripts being filed with the circuit court clerk, the Commonwealth, by letter dated June 14, 2019, lodged copies of these transcripts with the Clerk of this Court. Stanley's counsel was copied on the transmittal letter and also received copies of the transcripts.

warrants were not necessary because Stanley previously had consented to a search of the hotel room. The final assignment of error asserted that the circuit court erred in concluding that the good faith doctrine did not apply to the evidence collected as a result of the warrants.[8] In response, Stanley filed both a brief in opposition and a motion to dismiss, asserting that the petition suffered from fatal procedural defects.

On August 5, 2019, a panel of this Court issued an order granting the Commonwealth's petition in part and denying the petition in part. Specifically, the panel granted the petition regarding the Commonwealth's first, second, and fifth assignments of error. The panel denied the Commonwealth's appeal related to the third and fourth assignments of error, concluding that "[t]he Commonwealth did not raise these issues in the trial court" and that, as a result, "Rule 5A:18 bars our consideration of these assignments of error on appeal." The August 5, 2019 order also denied Stanley's motion to dismiss.

## ANALYSIS

### I. Stanley's Procedural Challenges

Although his motion to dismiss on the same grounds previously was denied, Stanley again asserts that the Commonwealth's petition for appeal suffered from fatal procedural defects. Specifically, he asserts that we were required to dismiss the Commonwealth's petition for appeal because the Commonwealth never filed a notice of filing transcripts in the circuit court. He also contends that the Commonwealth's petition was untimely filed because, after the document was initially filed, the Commonwealth had to amend it twice in response to notifications from this Court regarding compliance with certain rules governing petitions.

---

[8] Although the language of the fifth assignment of error does not expressly limit its scope to the May 10 warrants, the Commonwealth, in its opening brief in this Court, clarified that its "assignments of error address the suppression of the evidence from the May 10 warrant[s]." Accordingly, the circuit court's ruling regarding the May 11 warrant is not before us in this appeal.

Stanley's procedural default arguments require us to interpret relevant portions of the Code of Virginia and the Rules of the Supreme Court. Thus, he raises "question[s] of law that we review *de novo*." Minor v. Commonwealth, 66 Va. App. 728, 738 (2016).

### A. Notice of Filing Transcripts

The requirement that an appellant file a notice of filing transcripts with the clerk of the circuit court is found in Rule 5A:8(b)(1). The sanction for failing to comply with Rule 5A:8(b)(1) is found in Rule 5A:8(b)(4), which provides that

> [a]ny failure to file the notice required by this Rule that *materially prejudices an appellee* will result in the affected transcripts being stricken from the record on appeal. For purposes of this Rule, material prejudice includes preventing the appellee from raising legitimate objections to the contents of the transcript or misleading the appellee about the contents of the record.

(Emphasis added). Thus, in an ordinary appeal, "striking the subject transcripts from the record on appeal is the appropriate sanction for failing to file a notice of filing transcript(s); however, such sanction is imposed only if the appellee suffers material prejudice as a result of the failure to file the notice." Browning v. Browning, 68 Va. App. 19, 26 (2017).

A review of the record reveals that Stanley has not suffered such material prejudice because there is no question that he both had a copy of the relevant transcripts and was aware that the Commonwealth intended to use them. On June 12, 2019, the Commonwealth requested that the circuit court order the court reporter "to transcribe for both parties the suppression hearing[.]" The circuit court granted the motion and, in a June 12, 2019 order, ordered the court reporter to transcribe the suppression hearing for the parties. Counsel for Stanley was aware of both the Commonwealth's request and of the order, endorsing it "seen." Not only did the court reporter comply with the order, she filed with the circuit court clerk the transcripts of the suppression hearing and of the June 12, 2019 hearing that very day. Furthermore, on June 14, 2019, the Commonwealth mailed copies of the transcripts to the Clerk of this Court, copying

Stanley's counsel regarding the transmission and enclosing the transcripts. Although the filing should not have been made in this Court, the result of it was that Stanley again was provided with copies of the transcripts on which the Commonwealth intended to rely. Finally, we note that, despite seeking dismissal for the violation of the Rules, Stanley has not suggested how he has been "materially prejudiced" as that phrase is defined in Rule 5A:8(b)(4). "Accordingly, no sanction is appropriate with respect to [the Commonwealth]'s failure to file a notice of filing transcripts" in violation of Rule 5A:8(b)(1). Id.

Although the Commonwealth's failure to file a notice of filing transcripts does not merit sanction under the provisions of Rule 5A:8(b) applicable to appeals in general, Stanley argues dismissal for the failure is appropriate here because we have recognized that, "[i]n a Commonwealth's appeal, . . . the filing of the notice of filing transcript takes on additional significance[.]" Commonwealth v. Spinola, No. 0535-15-4, at *10 (Va. Ct. App. Sept. 8, 2015). This additional significance stems from the fact that the deadline for the Commonwealth to file its petition for appeal is determined by reference to the date that the Commonwealth files the notice of filing transcript(s). See Code § 19.2-402(B) ("The petition for a pretrial appeal shall be filed with the clerk of the Court of Appeals not more than 14 days after the notice of transcript . . . is filed[.]").

In Spinola, the Commonwealth filed a notice of filing transcript, but filed it after the deadline for doing so. Spinola, No. 0535-15-4, at *6. Although the Commonwealth filed its petition for appeal within fourteen days of its filing of a notice of filing transcript, it filed the petition for appeal more than fourteen days after the date by which the notice of filing transcript should have been filed. Thus, we concluded that the petition for appeal was not timely filed. Id. Because the petition for appeal had not been timely filed, we held that we lacked jurisdiction over the appeal and granted the motion to dismiss the Commonwealth's appeal. Id. at *12-13.

The instant case is distinguishable from Spinola in that, despite the Commonwealth's failures regarding the notice of filing transcripts, the petition for appeal still was filed timely. The circuit court issued its order on June 11, 2019, and the relevant transcripts were filed with the clerk of the circuit court on June 12, 2019. Thus, pursuant to Code § 19.2-405, the notice of filing transcripts was due "within three days of the filing of the transcript[.]" Because June 15, 2019, three days after the filing of the transcripts, was a Saturday, the notice of filing transcript was due on the following Monday, June 17, 2019. In turn, the petition for appeal, which was to be filed "not more than 14 days after the notice of transcript . . . is filed[,]" Code § 19.2-402(B), was due no later than July 1, 2019. Here, the petition for appeal was filed on June 20, 2019, well within the time frame established by the relevant statutes.[9] Accordingly, the Commonwealth's failure regarding the notice of filing transcripts neither caused prejudice to Stanley nor deprived us of jurisdiction by rendering the petition for appeal untimely.

Stanley next argues that, even if he suffered no prejudice as a result of the Commonwealth's failure to properly file a notice of filing transcripts, such failure still entitles him to a dismissal because, in a Commonwealth's appeal, such a filing is required by statute. Specifically, he notes that Code § 19.2-405 provides, in part, that

> [i]f a transcript . . . is filed, *the Commonwealth shall file with the clerk of the circuit court a notice, signed by the attorney for the Commonwealth, who is counsel for the appellant, identifying the transcript . . . and reciting its filing with the clerk.* There shall be appended to the notice a certificate by the attorney for the Commonwealth that a copy of the notice has been mailed or delivered to opposing counsel. The notice of filing of the transcript or written statement of facts shall be filed within three

---

[9] On page eleven of his brief in this Court, Stanley acknowledges that "[t]he Commonwealth filed its pretrial [p]etition for [a]ppeal on June 20, 2019." We take this statement as merely a recognition that the Commonwealth filed a petition for appeal that day. We do not take it to concede that the Commonwealth's June 20, 2019 filing was sufficient for all purposes. We address Stanley's arguments regarding alleged defects in the petition in Section I(B) below.

- 13 -

> days of the filing of the transcript or written statement of facts or within 14 days of the order of the circuit court, whichever is later.

(Emphasis added). Because the Commonwealth failed to file such a notice with the clerk of the circuit court, Stanley argues that the appeal must be dismissed.

In support of this argument, Stanley correctly notes that, because statutes governing pretrial appeals by the Commonwealth are "in derogation of the general constitutional prohibition against appeals by the Commonwealth[,]" they "must be strictly construed against the" Commonwealth. Commonwealth v. Hawkins, 10 Va. App. 41, 44 (1990) (internal quotation marks and citation omitted). He reasons that, because the statute provides that "the Commonwealth shall file" a notice of filing transcript, its failure to do so is fatal to its appeal.

We were faced with a similar argument in Commonwealth v. Hackett, No. 2594-07-2 (Va. Ct. App. Mar. 11, 2008). In Hackett, the Commonwealth failed to include with its notice of appeal a certification from the attorney for the Commonwealth that the appeal was not being interposed for purposes of delay and the evidence at issue was "substantial proof of a fact material to the proceeding" as required by Code § 19.2-398 and Code § 19.2-400. Id. at *1-2. We noted that Code § 19.2-400 specifically provided that the attorney for the Commonwealth "shall" file such a certification. Id. at *2. We concluded, however, that, in context, the use of "shall" in this instance was "directory only." As a result, we held that "the Commonwealth's failure to file the certification described in Code §§ 19.2-398 and -400 is not jurisdictional." Id. at *4 (footnote omitted). "Accordingly, we proceed[ed] to address the merits of the [Commonwealth's] appeal." Id. at *5.

We see no material difference in the "shall certify" direction found in Code § 19.2-400 and the "shall file" direction found in Code § 19.2-405. Applying the rationale of Hackett, the Commonwealth's failure regarding the notice of filing transcripts in this case does not deprive us of jurisdiction over the appeal. Because the Commonwealth's failure does not deprive us of

- 14 -

jurisdiction and did not prejudice Stanley, we deny Stanley's motion to dismiss related to the failure of the Commonwealth to file a notice of filing transcripts.

B. Defects in the Petition for Appeal

Stanley also argues that we must dismiss the appeal because the Commonwealth's petition for appeal was not fully compliant with the Rules of the Supreme Court when it was filed on June 20, 2019. Specifically, he notes that this Court sent the Commonwealth two notifications, one regarding the Commonwealth's failure to include the standard of review applicable to each of its assignments of error and one because the Commonwealth failed to include a reference to where in the record it had preserved its assigned errors, directing the Commonwealth to correct the deficiencies or face potential dismissal. Although we routinely issue such notifications to appellants whose petitions contain similar, non-jurisdictional defects and the Commonwealth corrected the deficiencies within the time frame specified by the Court in the notifications, Stanley asserts that we must dismiss the appeal. He argues that, because a fully compliant petition was not filed by the Commonwealth until July 25, 2019, a date well after the petition for appeal was due, we lack the power to hear the appeal.

In making this argument, Stanley relies heavily on our decision in Commonwealth v. Square, No. 2526-11-2 (Va. Ct. App. June 12, 2012). In Square, the Commonwealth's petition for appeal did not include any assignments of error. Id. at *1-2. Although the Clerk of this Court issued a deficiency notice and the Commonwealth filed a petition containing assignments of error in the time period provided for in that notice, we requested that the parties address whether the failure of the Commonwealth to file a petition containing assignments by the date the petition initially was due deprived us of jurisdiction. Id. at *2.

We concluded that the failure to include assignments of error in a petition was a jurisdictional defect requiring dismissal of the appeal. Id. at *8. In doing so, we relied upon

- 15 -

both Rule 5A:12(c)(1)(i), which provides that if a "petition for appeal does not contain assignments of error, the petition shall be dismissed[,]" and the decision of the Supreme Court in Davis v. Commonwealth, 282 Va. 339, 339 (2011), in which the Supreme Court held that its equivalent rule regarding assignments of error created "a mandatory procedural requirement and that the failure to comply with this requirement deprives th[e Supreme] Court of its active jurisdiction to consider the appeal." Square, No. 2526-11-2, at *3. In short, we concluded, based on both the express wording of the rules and the Supreme Court's interpretation of a similar rule, that the failure to include assignments of error represented a jurisdictional defect that could not be corrected by a subsequent amendment.

Stanley argues that the reasoning of Square requires dismissal of the instant appeal, but we recognize significant differences in the two cases that augur for a different result. Unlike the failure to include assignments of error, neither the rules nor our prior decisions suggest that a failure to include a reference to where in the record an alleged error is preserved or the failure to include the standard of review applicable to those assignments of error are jurisdictional defects requiring dismissal. In fact, the rules effectively reject such a characterization, with Rule 5A:12(c)(iii) providing that "[i]f there is a deficiency in the reference to the page(s) of the transcript, written statement of facts, or record where the alleged error has been preserved . . . a rule to show cause will issue pursuant to Rule 5A:1A." In turn, Rule 5A:1A(a) specifies that we

> may dismiss an appeal or impose such other penalty as it deems appropriate for non-compliance with these Rules. *Except as provided in Rule 5A:12(c)(1)(i) and (ii)* regarding assignments of error, prior to the dismissal of an appeal for any defect in the filings related to formatting, curable failure to comply with other requirements, or the failure to meet non-mandatory filing deadlines, this Court may issue a show cause order to counsel or a party not represented by an attorney, prescribing a time in which to cure such defect or to otherwise show cause why the appeal should not be dismissed or other penalty imposed.

(Emphasis added).[10] Unlike jurisdictional defects, which could not be corrected, defects akin to the defects asserted by Stanley here, subject to the provisions of Rule 5A:1(A)(a), are not jurisdictional.

In ordinary appeals, we routinely allow appellants who otherwise have timely filed a petition for appeal to correct deficiencies falling within the scope of Rule 5A:1A(a), and we often allow them to do so after the period of time in which to file the petition for appeal has run. In such cases, we view the process as correcting a deficiency in a pleading that already has been filed timely and not as the filing of a new pleading outside of the filing deadline. We discern no reason that we should view the process differently in a Commonwealth's appeal. Because the asserted deficiencies were not jurisdictional and were corrected consistent with Rule 5A:1A(a), we decline to dismiss the Commonwealth's appeal in this matter.

II.  Suppression of the Evidence Discovered as a Result of the May 10 Search Warrants

Turning to the merits of the Commonwealth's appeal, we note the burden is on the Commonwealth, as appellant, "to show that . . . the trial court committed reversible error." Hairston v. Commonwealth, 67 Va. App. 552, 560 (2017). Any claim of a Fourth Amendment violation presents "a mixed question of law and fact that we review *de novo* on appeal." Harris v. Commonwealth, 276 Va. 689, 694 (2008). Appellate courts "are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,]" and we "give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*). This Court, however, will "determine independently whether, under the law, the manner in which the

---

[10] Because Rule 5A:12(c)(5) does not provide a sanction for a failure to include the standard of review as required by that rule, non-compliance with the rule is governed by the general provisions of Rule 5A:1A(a).

evidence was obtained satisfies constitutional requirements." McCain v. Commonwealth, 261 Va. 483, 490 (2001).

The ultimate issue here can be resolved completely by the circuit court's conclusion that Jones' affidavits provided sufficient probable cause for the May 10 search warrants to authorize searching the electronic devices for photographs and other evidence of criminal activity related to drugs.[11] As a result, the officers, consistent with the Fourth Amendment, were permitted to search the files, including any photographic files, found on the electronic devices.[12] Thus, the question becomes what the officers were required to do when they encountered clear evidence of crimes that were not drug-related during the authorized search.

Contrary to Stanley's argument, the officers were not required to cease their search of the electronic devices when they discovered clear evidence of criminal activity that was non-drug-related. Rather, they were able to continue the search and seize any such evidence of unrelated crimes under the plain view doctrine.

The plain view doctrine exempts from the warrant requirement evidence of criminality that police see in plain view from a vantage point where they are lawfully authorized to be. "The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view." Commonwealth v. Thornton, 24 Va. App. 478, 483 (1997) (quoting Arnold v. Commonwealth, 17 Va. App. 313, 318 (1993)). As the United States

---

[11] We note that Stanley did not file a cross-appeal regarding the circuit court's ruling in this regard. See Code § 19.2-401 (providing that a "defendant may cross appeal from any orders from which the Commonwealth may appeal, pursuant to § 19.2-398").

[12] The only limitation on the officers' warrant-authorized search of the electronic devices was that the search be no more "extensive as reasonably required to locate the items described in the warrant[,]" Dotson v. Commonwealth, 47 Va. App. 237, 243 (2005) (quoting Kearney v. Commonwealth, 4 Va. App. 202, 205 (1987)), in this case photographs and other potential evidence of drug crimes. Because the warrants authorized officers to search for photographs related to potential drug crimes the officers necessarily were authorized to search *all* photographic files contained on the electronic devices.

Supreme Court has explained, "[t]he plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy." Illinois v. Andreas, 463 U.S. 765, 771 (1983). It matters not whether the officer has obtained his lawful vantage point due to the execution of "a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present[.]" Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971) (plurality opinion).

We have stated that for the doctrine to apply, the Commonwealth must establish three conditions: "1) that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, 2) that the incriminating character of the evidence must be immediately apparent, and 3) that the officer have a lawful right of access to the object itself." Daniels v. Commonwealth, 69 Va. App. 422, 435 (2018).[13] Applying these factors to the instant case, it is clear that the pornographic photographs of children at issue fall within the doctrine.

As noted above, officers were authorized by the May 10 warrants to search all of the photographic files on the electronic devices wholly independent of a search for child pornography. Thus, they did not violate the Fourth Amendment by accessing the photographic files on the electronic devices. The "incriminating character" of the images depicting child pornography was readily apparent; after all, the pornographic images were not simply evidence of a crime, in a very real sense, their mere existence on Stanley's electronic devices was the

---

[13] The plurality opinion in Coolidge argued for an additional requirement: "that the discovery of evidence in plain view must be inadvertent." Coolidge, 403 U.S. at 469. A majority of the United States Supreme Court explicitly rejected the Coolidge plurality's suggestion that the discovery must be inadvertent in Horton v. California, 496 U.S. 128, 130 (1990), holding "that even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition."

crime.  Similarly, because the pornographic images at issue are, in and of themselves, contraband, there is no question that, having discovered them, officers had a right to seize them.

Stanley argues that the Commonwealth failed to raise the plain view doctrine in either the circuit court or in its petition for appeal, and therefore, our consideration of the issue is barred by Rule 5A:18.  Although the Commonwealth never used the phrase "plain view" in the circuit court or in its petition, the arguments it did raise were sufficient to preserve the issue for appeal.

In the circuit court, the Commonwealth argued that even if the circuit court concluded that there was insufficient probable cause to justify a search for evidence related to child pornography, the search of the electronic devices nonetheless was authorized by the search warrants related to the Commonwealth's drug investigation.  In advancing this position, the Commonwealth expressly argued that, if officers execute a valid search warrant related to a drug investigation and encounter child pornography in the execution of that warrant, they "don't have to skip by [the child pornography] or gloss by it simply because it's not a drug text or a drug-related text."  This *is* the plain view doctrine argument absent the label.

Furthermore, it is clear that Stanley understood in the circuit court that this was the Commonwealth's position because he responded to it.  Specifically, he argued in response that, if officers executing a search warrant related to drug crimes encounter child pornography they must "stop [the investigation] and . . . go get another search warrant."  From this exchange, it is clear that the plain view issue was before the circuit court.[14]

Similarly, we find that the plain view doctrine argument is encompassed by the wording of the Commonwealth's first assignment of error.  The assignment of error reads as follows:

---

[14] Given the circuit court's suppression of evidence despite its finding that there was sufficient probable cause for the search warrants to issue related to the drug investigation, it necessarily rejected the Commonwealth's argument.  Accordingly, the Commonwealth obtained a ruling on the issue.

- 20 -

"The trial judge erred in suppressing the child pornography pictures after ruling that there was a 'proper nexus to search the electronic devices for pictures . . . related to the distribution of illegal substances.'" Even in the absence of the label "plain view doctrine," it should be readily apparent to all, and is certainly apparent to us, that this language places the plain view doctrine front and center in the appeal.

Because we find the issue of the plain view doctrine is properly before us and that it applies to the evidence viewed and ultimately seized as a result of the execution of the May 10 search warrants, we conclude the circuit court erred in suppressing the evidence of child pornography viewed and seized as a result of the execution of the May 10 search warrants.[15]

CONCLUSION

For the foregoing reasons, we conclude that the circuit court erred in suppressing the evidence, reverse the judgment of the circuit court regarding the evidence discovered as a result of the May 10 search warrants, and remand the matter to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

---

[15] We are charged with resolving cases on the best and narrowest ground. Commonwealth v. White, 293 Va. 411, 419 (2017). Because our resolution of the Commonwealth's first assignment of error is dispositive of the appeal, we do not reach the Commonwealth's remaining assignments of error. Accordingly, we offer no opinion as to whether there was sufficient probable cause to support the issuance of the May 10 warrants to search for evidence of child pornography or whether the good faith exception applied in this case.